864 F.2d 635
 RICO Bus.Disp.Guide 7095
 Michael J. SPARLING; Jean Sparling; Active Erectors &
Installers, Inc., Plaintiffs-Appellants,
v.
HOFFMAN CONSTRUCTION COMPANY, INC.; Industrial Indemnity
Company of the Northwest, Defendants-Appellees.
 Nos. 87-3931, 87-4436.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1988.
Decided Dec. 21, 1988.
 
 Edward D. Campbell, Seattle, Wash., for plaintiffs-appellants.
 Richard S. Twiss, Joseph E. Bringman, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Michael and Jean Sparling are the sole shareholders of Active Erectors & Installers, Inc. (Active). The Sparlings and Active appeal from the dismissal of their complaint. They contend that for various reasons Active's claims should not have been dismissed; that the change of venue from Washington to Alaska was improper; that the complaint adequately alleged a claim for fraud; that the Sparlings' claims were not derivative of Active's; and that the award of attorney's fees under Alaska law was improper. We affirm.
 
 PROCEDURAL BACKGROUND
 
 2
 On December 6, 1984 the Sparlings and Active filed suit in U.S. District Court in Washington against Hoffman Construction Co. and Industrial Indemnity Co. of the Northwest. The controversy arose out of a construction contract between Active, a subcontractor, and Hoffman, the general contractor, for the construction of a high school in Homer, Alaska. Active provided payment and performance bonds to Hoffman on which Industrial was the surety. Federal jurisdiction was based on diversity of citizenship.
 
 
 3
 This complaint was captioned "Complaint to Cancel Bond and for Damages." The appellants later claimed that the gist of the four causes of action in this complaint was that Hoffman fraudulently induced Active to enter this contract and give the bonds, and tortiously interfered with known business relations of the Sparlings. This is not apparent from the complaint.
 
 
 4
 Hoffman moved for a more definite statement, to stay proceedings until the matter was arbitrated, and to transfer the action to Alaska. The plaintiffs filed a motion to amend the complaint (even though they could have amended their complaint without leave of the court) and lodged their proposed amended complaint. This complaint would have added RICO claims by Active and the Sparlings.
 
 
 5
 Without having ruled on the motion to amend, the district judge in Washington dismissed all of Active's claims because the contract between Active and Hoffman required such claims to be submitted to arbitration.
 
 
 6
 The judge also granted Hoffman's motion to transfer the case to Alaska pursuant to 28 U.S.C. section 1404(a). The plaintiffs' subsequent motion for reconsideration was denied.
 
 
 7
 Hoffman moved the district court in Alaska for a 12(b)(6) dismissal or for summary judgment on the Sparlings' claims. At the hearing on this motion on June 2, 1986, Judge Fitzgerald informed the Sparlings' counsel that the complaint was being dismissed for failure to plead fraud with particularity. The judge informed the Sparlings' counsel of an additional defect in the complaint. He granted the Sparlings twenty days to amend the complaint. He warned that the Sparlings were "going to run out of opportunities to replead this." Referring to the proposed amended complaint, the judge said "I have looked at the amended complaint, and this is going to be the last time out." The next day the order was filed requiring the Sparlings to serve and file an amended complaint within twenty days.
 
 
 8
 Instead of complying with this order, twenty-seven days later the Sparlings filed a notice of appeal to the Ninth Circuit. This appeal was voluntarily dismissed on September 22, 1986.
 
 
 9
 On July 15, 1986, Hoffman moved to dismiss with prejudice all claims because of the Sparlings' failure to comply with the order to amend the complaint. In response the Sparlings argued that the district judge's ruling at the June second hearing was unclear, and that they did not know whether the court was granting them leave to amend and whether the court found the proposed amended complaint defective. By an order filed December 19, 1986, the judge denied Hoffman's motion to dismiss and granted the Sparlings twenty days to amend their complaint.
 
 
 10
 On January 7, 1987 the Sparlings filed an amended complaint identical to the proposed amended complaint which the judge found defective in June, 1986. This complaint contained allegations on the first four causes of action nearly identical to the original complaint which was dismissed, and not in any respect revised to correct the deficiencies mentioned by the judge.
 
 
 11
 On January 30, 1987 Hoffman again moved to dismiss the complaint because the Sparlings had failed to comply with the order that they amend their complaint to plead fraud with particularity, and because the Sparlings had no standing to assert the corporation's RICO claim. After a hearing, Judge Kleinfeld dismissed the first four claims with prejudice because the Sparlings had not corrected the deficiencies despite "plenty of opportunity for discovery, amendment and a warning from Judge Fitzgerald." He dismissed the Sparlings' RICO claim, holding that it was a corporate claim and that the Sparlings had therefore not stated a claim upon which relief could be granted. The plaintiffs then voluntarily dismissed Industrial Indemnity.
 
 
 12
 The court granted Hoffman's motion for attorney's fees. Only part of the fees claimed were awarded because the court found the Sparlings' claims were not frivolous or in bad faith and because the fees seemed high and were not itemized. This award was based on Alaska law "because the contract so provides" and "[e]ven if it did not, Alaska law would control under conflict of laws principles."
 
 DISCUSSION
 I. The Dismissal of Active's Claims
 
 13
 The district court dismissed Active's claims because Active had agreed to submit these claims to arbitration. Active argues that this dismissal was improper for several reasons.
 
 A.
 
 14
 First, Active contends that dismissal was improper because Hoffman only requested a stay pending arbitration, not a dismissal. The fact that a dismissal was not requested, however, does not make it improper. "A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim...." Wong v. Bell, 642 F.2d 359, 361 (9th Cir.1981) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1357 at 593 (1969)). The court must give notice of its intention to dismiss and give the plaintiff some opportunity to respond unless the "[p]laintiffs cannot possibly win relief." Wong, 642 F.2d at 362.
 
 
 15
 In opposition to the motion for a stay the plaintiffs argued that the arbitration clause did not apply because the plaintiffs were fraudulently induced to enter the contract. As the district court pointed out, however, fraud claims must be submitted to arbitration unless the arbitration clause itself was fraudulently induced. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967). The plaintiffs did not claim that the clause itself was fraudulently induced. Thus the plaintiffs could not possibly win relief and the dismissal was appropriate even though it was on the court's own motion.
 
 B.
 
 16
 Second, Active argues that the district court lacked discretion to dismiss Active's claims because the provision for stay in 9 U.S.C. section 3 is the defendant's only remedy where there is an arbitration clause. In Martin Marietta Aluminum, Inc. v. General Electric Co., 586 F.2d 143 (9th Cir.1978), this court affirmed a district court's grant of summary judgment where the contract provided that a request for arbitration within six months after a controversy arose was a condition precedent to the institution of litigation and where " '[t]he language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims.' " Id. at 147-48 (quoting the district court opinion). The plaintiff in Martin Marietta argued that 9 U.S.C. section 3 required the defendant to apply for a stay pending compliance with the contractual arbitration clause. This court held that 9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause. Thus, the provision did not limit the court's authority to grant a dismissal in this case.
 
 
 17
 The district court acted within its discretion when it dismissed Active's claims. As in Martin Marietta, the arbitration clause was broad enough to bar all of the plaintiff's claims since it required Active to submit all claims to arbitration.
 
 C.
 
 18
 Third, Active contends that dismissal was improper because a motion to amend the complaint to add a RICO claim was pending, and Active was entitled to the amendment as a matter of right under Rule 15(a) of the Federal Rules of Civil Procedure.
 
 
 19
 Active's motion to amend was unnecessary. Active could have amended without leave of the court, since no responsive pleading had been filed. See 6 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1480 (1971). The court should have granted this unnecessary request. See Kirk v. United States, 232 F.2d 763, 770 (9th Cir.1956); Stewart v. RCA Corp., 790 F.2d 624, 631 (7th Cir.1986). Allowing the amendment, however, would not have altered the outcome. RICO claims are arbitrable. Shearson/American Express Inc., v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987). The arbitration provision in the Active-Hoffman contract by its terms applies to any dispute which arises. This provision is broad enough to encompass RICO claims. It is similar to the one the Supreme Court held required submission of RICO claims to arbitration in Shearson. See 107 S.Ct. at 2335-36. Thus, the trial judge's dismissal of Active's claims necessarily included the proposed RICO claim.
 
 D.
 
 20
 Fourth, Active argues dismissal was improper because Active was a "necessary party" under Rule 19(a) of the Federal Rules of Civil Procedure. Rule 19, however, does not require that a party without a claim nonetheless be allowed to assert one.
 
 E.
 
 21
 Fifth, Active argues that dismissal was improper because Hoffman waived arbitration in favor of proceedings in Alaska State Court. The arbitration clause in the contract states that it may be waived if the parties mutually agree. The scope of such a waiver would be governed by the agreement. Hoffman only waived the arbitration clause in favor of ongoing state court proceedings, not the federal action.
 
 
 22
 The trial court did not err in dismissing Active.
 
 II. Transfer to Alaska
 
 23
 The Appellants contend that the transfer to Alaska was improper. We review a transfer under 28 U.S.C. section 1404(a) for abuse of discretion. "Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979). Section 1404(a) gives the district court discretion to order a transfer "[f]or the convenience of parties and witnesses, in the interest of justice."
 
 
 24
 The district judge found that there were competing factors for and against transfer, which he listed, but the fact that the owner of the project appeared to be a likely third party defendant and probably would not be subject to personal jurisdiction in Washington "decidedly tilts the scales in favor of the Alaska venue." He held that "[t]he ability to join all appropriate parties and avoid duplicative litigation, along with the convenience arguments raised by Defendant as well as the fact that many third party witnesses ... will have to travel no matter where the trial is held, require the transfer of this case to the Alaska venue."
 
 
 25
 The Sparlings argue that the court was factually wrong on the issue of ability to join all appropriate parties, because the contract between the owner and Hoffman contained a forum selection clause providing that claims arising out of the contract could only be filed and prosecuted in Kenai, Alaska, and the owner could not therefore be made a party to a suit in Anchorage. In their brief on the motion for reconsideration, the appellants pointed out this alleged error, and the judge denied the motion. It is not clear that the court was wrong. For example, if the suit had proceeded to the merits, Hoffman might have been able to show that the forum selection clause should not be enforced because enforcement would require Hoffman to litigate the issues in two fora, and therefore "enforcement would be unreasonable and unjust." See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 512 (9th Cir.1988) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). Alternatively, the owner might have waived the forum selection clause in favor of the Anchorage venue.
 
 
 26
 The judge carefully considered and listed the factors weighing for and against the transfer before ordering it. He did not change the order after being informed of his alleged mistake regarding one factor. Given the possibility that the owner could have been made a party in Alaska, and the careful consideration the trial judge gave to the competing factors, we cannot say the transfer was an abuse of discretion.
 
 III. Dismissal of the Sparlings' Fraud Claims
 
 27
 The Sparlings argue that the June second ruling dismissing the original complaint for failure to plead fraud with particularity was improper. They claim that the judge was required to allow the amendment and consider the proposed amended complaint before ruling on the motion to dismiss. Thus, they argue, the dismissal with prejudice seven months later for failure to comply with the June third order to amend their complaint within twenty days was improper.
 
 
 28
 This argument is meritless. At the June second hearing the judge told the Sparlings' counsel that he had "looked at the amended complaint and this [was] going to be the last time out" and that they must file a new complaint within twenty days. Thus, he told them that the proposed amended complaint was deficient and allowed them to file a new one. Nonetheless, seven months later when they finally filed an amended complaint, they simply refiled this complaint! Furthermore, the complaint that they ultimately filed was almost identical to the original complaint dismissed on June second. It was not improved in any respect to comply with the order to plead fraud with particularity.
 
 
 29
 The dismissal was proper. The Sparlings failed to comply with the order to amend, instead improperly appealing the order. Nonetheless, six months later the court gave them another chance to amend their complaint. Instead of complying with the June third order by correcting the deficiencies they refiled the complaint the judge told them was defective at the June second hearing.
 
 
 30
 The Sparlings also argue that the dismissal was improper because, if every "cause of action" in the complaint is examined, all of the factual elements of fraud may be found. Even if this were true, the complaint would be deficient under Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."
 
 IV. Dismissal of the Sparlings' RICO Claim
 
 31
 The court dismissed the Sparlings' RICO claim for failure to state a claim on which relief could be granted, holding that "it is the corporation's claim and not the Sparlings' claim."
 
 
 32
 The Sparlings contend that as shareholders in Active and as guarantors of the bonds given by Active they have standing to assert the RICO claim. They claim that this argument is supported by Sedima, S.P.R.L. v. Imrex, 473 U.S. 479, 495, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), and Haroco v. American Nat'l Bank & Trust Co., 747 F.2d 384 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Those cases, however, did not discuss shareholder or guarantor standing to assert RICO claims based on injuries to the corporation. Rather they dealt with the type of injury required to state a RICO claim.
 
 
 33
 This Circuit apparently has not considered the issue of shareholder or guarantor standing to assert RICO claims. Those circuits that have considered the issue, however, are unanimous in holding that there is no shareholder standing to assert RICO claims where the harm is derivative of harm to the corporation. See Roeder v. Alpha Industries, Inc., 814 F.2d 22, 29-30 (1st Cir.1987); Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.1986), cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); Crocker v. FDIC, 826 F.2d 347, 349 (5th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); Gaff v. FDIC, 814 F.2d 311, 315, vacated in part on other grounds, 828 F.2d 1145 (6th Cir.1987).
 
 
 34
 The First, Second, Fifth and Sixth Circuits look to general corporate law to determine if a RICO claim is for harm derivative of the harm to the corporation or for individual harm. If it is derivative, the shareholder has no standing to assert the RICO claim. See Roeder, 814 F.2d at 29-30; Rand, 794 F.2d at 84; Crocker, 826 F.2d at 349; Gaff, 814 F.2d at 315. The Seventh Circuit has accepted the principle as well: "The investors in the firm suffer when the firm incurs a loss, yet only the firm may vindicate the rights at issue.... These principles should apply to RICO cases...." Carter v. Berger, 777 F.2d 1173, 1175 (7th Cir.1985).
 
 
 35
 The Sparlings argue that their harm is not derivative, but direct. This argument has no merit. The Sparlings must show either an injury distinct from that to other shareholders or a special duty between Hoffman and the Sparlings if they are to have standing to assert RICO claims based on injury to the corporation. See, e.g., Hikita v. Nichiro Gyogyo Kaisha, Ltd., 713 P.2d 1197, 1199 (Alaska 1986); Hunter v. Knight, Vale & Gregory, 18 Wash.App. 640, 644-45, 571 P.2d 212, 215-16 (1977) (citing 13 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 5927 (perm. ed. rev.1970)). The wrong alleged is a fraud on the corporation. Because they are the sole shareholders they cannot show an injury distinct from that to other shareholders. Nor was there a special relationship between the Sparlings and Hoffman which would create the kind of duty required. Thus, the court was correct in ruling that they had no standing as shareholders to assert a RICO claim.
 
 
 36
 Any harm to the Sparlings due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation. Thus, this status does not give the Sparlings standing. See generally Arctic Contractors, Inc. v. State, 573 P.2d 1385, 1386 (Alaska 1978).
 
 V. Attorney's Fees
 
 37
 The appellants contend that Washington law controls this case, and the Judge thus erred in awarding attorney's fees under Alaska law. We review the District Court's choice of law de novo. Pereira v. Utah Transport, Inc., 764 F.2d 686, 689 (9th Cir.1985), cert. dismissed, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986).
 
 
 38
 Because the complaint was originally filed in Washington, Washington's choice of law rules apply. See Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964); General Accident Ins. Co. v. Namesnik, 790 F.2d 1397, 1398, amended, 799 F.2d 539 (9th Cir.1986). Washington law gives effect to an express choice of law clause in a contract as long as application of the chosen law does not violate Washington's fundamental public policy. McGill v. Hill, 31 Wash.App. 542, 547, 644 P.2d 680, 683 (1982).
 
 
 39
 The general contract between Hoffman and the owner provided that "[a]ny litigation which may be brought upon this contract or upon any claims arising out of this contract, shall be governed by the laws of the State of Alaska." This provision was incorporated into the subcontract between Hoffman and Active. The appellants argue that the contractual provision does not apply to fraud and RICO claims, and since those were the bases of the complaint the choice of law provision should not control the award of attorney's fees. There are apparently no Washington cases on the issue. Assuming Washington courts would accept the traditional view, unless the choice of law provision itself was obtained by a misrepresentation it will be given effect. See Restatement (Second) Conflict of Laws Sec. 201 comment c (1971). The appellants do not argue that the clause was obtained by misrepresentation. Thus it must be given effect.
 
 
 40
 The plaintiff's claims were based on the allegation that Hoffman misrepresented the true scope of the work, inducing Active to sign the subcontract to its detriment. The choice of law provision applies to these claims. The award of attorney's fees under Alaska law was appropriate.
 
 CONCLUSION
 
 41
 The court did not err in dismissing Active's claims because Active agreed to submit such claims to arbitration. The transfer to Alaska was not an abuse of discretion. The dismissal of the Sparlings' fraud claims for failure to correct the defect in their fraud pleading was not error. The dismissal of the Sparlings' RICO claim for lack of standing was proper. The application of Alaska law to the attorney's fees decision was correct because of the choice of law provision in the contract.
 
 
 42
 AFFIRMED.