**HOFFMAN CONSTRUCTION COMPANY OF OREGON, an Oregon Corporation, Plaintiff–Appellee,**

v.

**ACTIVE ERECTORS AND INSTALLERS, INC., a Washington Corporation, Defendant–Appellant.**

**No. 90–35523.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 22, 1991.

Decided July 8, 1992.

Michael E. Kreger, Perkins Coie, Anchorage, Alaska, for plaintiff-appellee.

Before: TANG, REINHARDT and RYMER, Circuit Judges.

RYMER, Circuit Judge:

After receiving a favorable judgment against Hoffman Construction Company in Alaska state court, Active Erectors and Installers, Inc. filed a demand for arbitration of its RICO claim against Hoffman, a claim which Active had not litigated in state court. Hoffman then brought this suit for declaratory and injunctive relief in order to forestall such an arbitration. The district court granted a permanent injunction in Hoffman's favor. The court reasoned that Active waived its right to arbitrate its RICO claim when it opted to proceed in state court, and that the state court action, under the doctrine of res judicata, barred any subsequent attempt to arbitrate that claim.

On appeal, Active contends that its decision to proceed in state court on certain of its claims does not constitute a waiver of its right to seek a subsequent arbitration of its RICO claim. We believe, however, that the district court correctly found that Active's waiver of arbitration in favor of an Alaska state court proceeding included a waiver of the right to arbitrate a potential RICO claim. That state court action therefore bars a subsequent RICO arbitration based on the same set of facts because of res judicata. Accordingly, we affirm.

I

In October 1983, Hoffman and the Kenai Peninsula Borough entered into a contract for the construction of a high school in Homer, Alaska. Hoffman then subcontracted the structural steel work to Active. The contract between Hoffman and Active provided that disputes between them that did not involve the conduct of the property owner had to be arbitrated unless they agreed otherwise.

Edward D. Campbell, Seattle, Wash., for defendant-appellant.

A dispute subsequently arose among the Borough, Hoffman, and Active concerning cost overruns. In December 1984, Active sued Hoffman in federal court asserting, among others, a RICO claim. In February 1985, Active demanded arbitration against Hoffman. On April 15 of that year, Active wrote a letter to Hoffman asserting that Active was prepared to "bring[ ] *all* of the monetary claims of Active against Hoffman" arising out of the construction project in Alaska state court. (Emphasis added). The letter, however, also stated that the RICO claim, along with two other claims, would remain in federal court. Active further informed Hoffman that it would dismiss its arbitration demand as soon as Hoffman assured Active that it would not change its position "that all claims against it may be tried [in state court]."

In May 1985, the district court dismissed the federal suit on the ground that the claims should have gone to arbitration instead of to federal court. We subsequently affirmed the dismissal in *Sparling v. Hoffman Construction Co.*, 864 F.2d 635 (9th Cir.1988).

In December 1985, Active brought its Alaska state suit without any RICO claim. Thus, as of the time the state suit was initiated, the federal district court had dismissed the RICO claim (along with all the other claims), and no RICO claim had been asserted in any state court proceeding. Then, when Hoffman responded to the state suit and did not raise the issue of arbitration, Active, in March 1986, withdrew its arbitration request. The state court case was tried in July and August of 1987, and in March 1988 the superior court entered judgment in favor of Active.

We issued our opinion in *Sparling* in December 1988. We affirmed the district court on the ground that Active had agreed to submit its claims to arbitration. In January 1989, shortly after this opinion was issued, Active filed a new demand for arbitration of its RICO claim. Hoffman brought this suit in federal district court seeking declaratory and injunctive relief to prevent such an arbitration from proceeding. The district court ruled in favor of Hoffman. The court held that the RICO claim had always been arbitrable under the agreement, and that by proceeding in state court without a RICO claim, having waived arbitration to get into state court, Active was precluded from adjudicating the RICO claim in a new arbitration.

## II

■ Hoffman argues that Active waived its right to compel arbitration. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986). We agree with the district court that Hoffman satisfactorily demonstrated the existence of all three prongs.

First, it cannot be said that Active lacked knowledge of the right to compel arbitration. The contract itself called for arbitration of disputes between Active and Hoffman. Additionally, the district court, prior to initiation of the state action, dismissed the federal suit on the ground that the claim should have gone to arbitration. Thus, both the contract and the federal court informed Active of the arbitrability of its claim. The fact that the Supreme Court did not definitively address the arbitrability of RICO claims until 1987 does not vitiate the conclusion that Active was aware that its claims were arbitrable. *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 238–42, 107 S.Ct. 2332, 2343–46, 96 L.Ed.2d 185 (1987). Notably, Active faced no precedential barrier in this circuit to arbitration of its RICO claim prior to the Supreme Court's decision in *Shearson*.

As to the second prong of the waiver test, the district court properly concluded that Active acted in a manner inconsistent with its right to arbitration. Active withdrew its request to arbitrate in light of Hoffman's waiver of arbitrability, and that waiver extended to "*any* of the disputes

between it and Active Erectors." (Emphasis added). Thus, Active waived arbitration of *all* its claims against Hoffman, including its RICO claim. Active then sued in state court, an act that undeniably is inconsistent with enforcing its arbitration right. Furthermore, at the time Active initiated its state court suit, it had already been told by the district court that all of its claims were arbitrable, and yet it still opted for a route—state court litigation—that was inconsistent with that arbitration right.

Active contends that it did not waive its right to arbitration when it initiated the Alaska state court suit because it did not believe that it could bring a RICO claim in state court. This argument in unavailing because we decided *Lou v. Belzberg*, 834 F.2d 730, 735–39 (9th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988), permitting such jurisdiction, before final judgment was entered in the state action. Active, therefore, could have sought permission from the state court to amend its pleadings to include a RICO claim. Because the holding in *Lou* gave Active the right to assert its RICO claim in the state court, it had no excuse not to do so, given that the RICO claim indisputably arose out of the same course of conduct as the other state claims.

Nor does our decision in *Sparling*, 864 F.2d 635, support Active's contention. In *Sparling*, we held that Hoffman had not waived arbitrability in favor of a federal court case. *Id.* at 639 ("Hoffman only waived the arbitration clause in favor of ongoing state court proceedings, not the federal action."). Thus, *Sparling* simply stands for the proposition that, if the choice were between arbitration and a *federal* court case as to *any* claims (including RICO), Active had to arbitrate those claims because Hoffman never waived its right to arbitration in favor of a federal case.

Active, foreclosed from federal court, still could reach an agreement with Hoffman, as it actually did, that any of its claims could be brought in state court. Pursuant to that agreement, Hoffman waived arbitration for all claims, including RICO, in favor of the state court action, but retained its position that it would demand arbitration over federal litigation. As a result, the only court in which Active could bring *any* of its claims was state court, and by choosing to sue in state court, it waived its right to arbitration.

Finally, prejudice to Hoffman is apparent. As the district court stated, "[t]he prejudice is staleness of the claim, and more importantly, the subjection of Hoffman to the litigation process in State Court, the discovery process, the expense of litigation, and the judgment for $679,434.76."

## III

■ Having waived arbitration in favor of the Alaska state court proceeding, res judicata now bars a RICO arbitration based on the same set of facts. Active received a judgment against Hoffman in state court. "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). In Alaska, res judicata would bar Active's RICO claim because res judicata covers "relevant claims that *could* have been raised" in the prior case, but were not. *DeNardo v. State*, 740 P.2d 453, 456 (Alaska) (emphasis added), *cert. denied and appeal dismissed*, 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987). A mere change in the legal theory asserted cannot revive an already barred action. *Id.* Because the RICO claim arose out of the same course of events already litigated in the Alaska state court suit, Active may not arbitrate that claim now.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I respectfully dissent from the decision of the majority. I believe that the threshold question in this case is whether Active was justified in pursuing its effort to obtain a judicial determination of its RICO claim in early 1985; because it was, it should not be penalized for having done so. Moreover, Active did not subsequently for-

feit its right to pursue its RICO claim separately, if only for the reason that it specifically preserved that right when it filed its state court action.

That the threshold determination must be whether Active was justified in keeping its RICO claim separate when it originally demanded arbitration in early 1985 can be seen by examining section III of the majority opinion. The opinion is dependent upon the proposition that the preclusive effect of a judgment includes any claim that could have been raised in that proceeding; here, according to the majority that includes the RICO claim that Active split-off prior to the time the state court action was filed. *See* ante at 799 (citing *DeNardo v. State,* 740 P.2d 453, 456 (Alaska), *cert. denied and appeal dismissed,* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987). Although the proposition that a litigant may not ordinarily split his claim is often stated, so are several important exceptions to that rule. *See generally* Restatement (Second) of Judgment § 26.[1] If a claim falls within one of those exceptions and has been properly split-off, it is, of course, not precluded by virtue of a plaintiff's failure to raise it in the principal action. Here, there are two exceptions that are applicable and that bar preclusion in this case: first, a plaintiff may split his claim when the defendant acquiesces in such a split; second, a plaintiff may do so when jurisdictional barriers justify the split. *See id.* §§ 26(a) & (c). Although Active's actions satisfy both of these exceptions, the majority never discusses either of them.

Active first split its claim in February, 1985, when it filed an arbitration demand that did not contain its RICO claim while continuing to pursue its RICO action in federal court. Active's decision to split its claim appears to have been justified on jurisdictional grounds. Although by June 8, 1987, it was established that RICO claims were arbitrable, *see Shearson v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96

L.Ed.2d 185 (1987), in February of 1985 a reasonable litigant would likely have believed that the contrary was true. The leading case on the issue, *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.,* 576 F.Supp. 566, *amended,* 579 F.Supp. 1049 (S.D.N.Y.1983), which held that RICO claims were not arbitrable, had recently been affirmed by the court of appeals, *see* 745 F.2d 190, 196 (2d Cir.1984). A number of other courts had agreed. *See, e.g., Witt v. Merrill Lynch, Inc.,* 602 F.Supp. 867, 870 (W.D.Pa.1985); *Universal Marine Ins. Co. v. Beacon Ins. Co.,* 588 F.Supp. 735, 738 (W.D.N.C.1984); *Wilcox v. Ho–Wing Sit,* 586 F.Supp. 561, 567 (N.D.Cal.1984). There does not appear to have been any contrary authority at that time. Thus, in 1985 Active was certainly justified in believing that its RICO claim was not arbitrable.

There are other factors which support Active's right to split its claims in light of the reasonableness of its belief that RICO claims were not arbitrable. First, the specific question facing Active was whether to bring its RICO claim in court or in arbitration. It may be that a litigant cannot rely on uncertainty in the law when choosing to split its claim between state and federal court. In such a case, the law generally assumes that state and federal courts are equally competent so that a litigant cannot justify dividing its claims between the two—it must pick one and seek a definitive resolution of the jurisdictional issue in that court. *See* Restatement § 86 comment b. By contrast, we generally do *not* assume that courts and arbitral proceedings are equally competent; to the contrary, the law assumes that legal disputes are ordinarily resolved by courts unless the parties have agreed to arbitrate them. For this reason, the issue of arbitrability is for the courts, not the arbitrator, to decide. *See AT & T v. Communications Workers of America,* 475 U.S. 643, 647, 106 S.Ct. 1415, 1417–18, 89 L.Ed.2d 648 (1986); *United Steelwork-*

---

**1.** Although the Restatement is not law, both the Alaska Supreme Court and our circuit have cited its split claim provisions with approval, *see, e.g., State v. Smith,* 720 P.2d 40, 41 (1986);

*Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1321 (9th Cir.1992), and there appears to be no authority to suggest that the Alaska courts would decline to follow its provisions.

*ers of America v. Warrior & Gulf Naviga-tion Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). When a party justifiably believes that it has a right to pursue a claim in a judicial rather than an arbitral proceeding, it must be free to test the validity of that belief.

Second, the nexus of contracts underlying the disputes between Hoffman and Active recognizes that a litigant will split his claim. As both parties recognize, the arbitration clauses in those contracts require arbitration of only *some* claims. Thus, in drafting the contracts, the parties must have assumed that claims would be divided between arbitration and court proceedings. Accordingly, the burden placed on Hoffman by Active's pursuit of claims against it in two different fora should be given little if any weight.

As noted earlier, Active's splitting of its claims also falls under the other exception to the general anti-claim splitting rule. Hoffman acquiesced in Active's decision to try the RICO claim separately. When Hoffman and Active reached an agreement to consolidate all the claims in the Alaska state court action, Active expressly reserved the RICO claim from the agreement, stating that that claim "w[ould] remain in federal court." Hoffman did not object to this reservation when the other claims were consolidated in state court. It should hardly be allowed to do so now.

For the above reasons, I believe that the general rule against claim splitting relied on by the majority is simply inapplicable. Active was justified in seeking a judicial resolution of its RICO claim in the federal courts. Its attempt to do so did not serve to waive its right to arbitrate in the event the federal court found that arbitration rather than litigation was the required procedure. The right to pursue a justified belief in the justiciability of a claim presupposes the ability to arbitrate if the court determines that the claim is subject to an arbitration provision. That is what happened here—Active pursued a justified belief in the justiciability of its RICO claim but, after a change in the law, the court determined that the claim was subject to

arbitration. Moreover, Hoffman never objected to, and in fact acquiesced in, Active's preservation of its right to pursue its RICO claim separately, and to withhold that claim from the state court action. In view of the above, there is simply no basis for the majority's conclusion that Active waived its right to arbitrate the RICO claim or that it was prohibited from splitting that claim off from the remainder of the proceedings. Accordingly, the state court judgment is not res judicata as to the claim that Active deliberately and expressly withheld without objection from Hoffman at the time it filed the state court action.

Aside from the above, I have another fundamental disagreement with the majority's approach. I believe that the majority opinion fails to take into account the difficulties involved in a party's decision whether to arbitrate or adjudicate a claim. Some claims are arbitrable, others are not. The law is frequently abstruse and may change during the course of the proceedings, as happened in this case. The majority's disposition places all the risk resulting from this legal uncertainty on the plaintiff, the person possessing legitimate claims. It imposes the ultimate penalty, that of forfeiture, on plaintiffs who guess "wrong". This approach does a disservice to plaintiffs generally and is inconsistent with the ultimate purpose of dispute resolution—to resolve disputes on the merits. *Cf. Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966) ("If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits."); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome."). Accordingly, I am compelled to dissent.