**RIO PROPERTIES, INC., a Nevada corporation, Plaintiff,**

v.

**STEWART ANNOYANCES, LTD., et al. Defendants.**

**No. 2:01 CV 0459 LRH PAL.**

United States District Court,
D. Nevada.

March 3, 2006.

---

Kristina Pickering, Steve Morris, Morris, Pickering, Peterson & Trachok, Los Vegas, NV, for Plaintiff.

Louis R. Miller, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP, Los Angeles, CA for Defendant.

## ORDER

HICKS, District Judge.

The following are currently pending before the court:

Defendants' Objections to Plaintiff's Proposed Judgment (# 406 [1]), filed October 5, 2005; and Plaintiff's Response to Defendants' Objections (# 408), filed October 12, 2005.

Plaintiff's Response to the Court's Sanctions Order of October 11, 2005 (# 420)

---

1. Refers to the court's docket number.

("Sanctions Order"), filed November 10, 2005; Defendants' Objections to Plaintiff's Response (# 422), filed December 5, 2005; Defendants' Supplement to its Objections to Plaintiff's Response (# 424), filed December 9, 2005; and Plaintiff's Motion to Strike Defendants' Objections to Plaintiff's Response and Defendants' Supplement thereto (# 425).

## I. DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JUDGMENT

### A. BACKGROUND

Trial in this action commenced on August 23, 2005 and ended on September 7, 2005. The jury was charged with deciding whether the contract at issue allowed Defendants to retain $2,000,000 received as compensation for a concert Mr. Stewart ("Stewart") did not perform, or, on the other hand, whether Plaintiff Rio Properties, Inc ("Rio") was entitled to a refund of those funds. At the conclusion of the trial, the jury returned the following verdict:

> We find that the parties did not enter into an enforceable contract because they did not mutually consent to the same material terms with respect to rescheduling and/or refund of the guaranteed compensation. By way of refund, we find in favor of Plaintiff Rio Properties, Inc. and against the Defendants, Stewart Annoyances, Ltd. and Roderick Stewart, and assess Plaintiff's damages in the sum of $2 million plus accrued interest from the 9th day of November, 2000.

On September 14, 2005, the court ordered Plaintiff's counsel to submit a proposed judgment, and the court allowed for the filing of objections by Defendants (*See* # 405). Plaintiff complied with the court's order. On October 5, Defendants filed their Objections (# 406), along with its own proposed judgment, and Plaintiff subsequently filed its Response to Objections (# 408). The court now considers the proposed judgments and the argument presented by both sides.

### B. DISCUSSION

#### 1. PREJUDGMENT INTEREST

In its proposed order, Plaintiff calculated the prejudgment interest at California's statutory rate of 10% on the $2,000,000 from November 9, 2000 through October 5, 2005,[2] *see* Cal. Civ.Code § 3289, concluding that Defendants owe Plaintiff $981,926.40 in statutory prejudgment interest. They further concluded that they were entitled to the earned trust account interest of at least $79,081.51, for a total judgment of $3,061,007.91.

■ Defendants object to Plaintiff's calculation of the prejudgment interest on two grounds. First, in spite of the fact that the March 1999 Agreement contains a California choice-of-law clause, *see* March 1999 Agreement, ¶ D(4), they argue that Nevada law, not California law, applies to the calculation of prejudgment interest.

■ In diversity jurisdiction, state law governs all awards or pre-judgment interest, *Lund v. Albrecht*, 936 F.2d 459, 464–65 (9th Cir.1991); *see also* Docket No. 76, p. 14, and a federal court sitting in diversity applies the forum state's choice-of-law rules. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir.2000); *Northern Ins. Co. of N.Y v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1359 (9th Cir.1992). Therefore, the court will apply Nevada's choice-of-law rules in deciding whether or not the California choice-of-law clause should be enforced. Nevada routinely honors choice-

---

**2.** Plaintiffs relied on an estimated date for the entry of judgment. The final total of prejudgment interest will be calculated from November 9, 2000 until the actual date of the entry of judgment.

of-law provisions. *See Engel v. Ernst*, 102 Nev. 390, 724 P.2d 215, 216–217 (1986).

Despite the fact that Nevada routinely enforces choice-of-law provisions, Defendants claim that the choice-of-law provision in the parties' contract, which states that California law shall govern the parties' agreement, *see* March 1999 Agreement, ¶ D(4), is not applicable to prejudgment interest because the jury found "that the parties did not enter into an enforceable contract." As a result, Defendants allege that the California choice-of-law clause in the March 1999 Agreement is also unenforceable and that the court must apply Nevada's default choice-of-law rules. Unfortunately, Defendants do not provide any authority for the proposition that where a contract is unenforceable because of mistake regarding a separate material clause, the choice-of-law provision is also unenforceable.

Plaintiffs argue that the choice-of-law provision in the parties' contract remains in force even though the jury found that the contract was unenforceable because the parties "did not mutually consent to the same material terms with respect to rescheduling and/or refund of the guaranteed compensation." Jury Verdict. They claim that the lack of mutual consent goes only to the refund/rescheduling obligation and not to choice-of-law agreement. As authority for their position, they cite to the Restatement (Second) of Conflict of Laws, which states:

> The fact that a contract was entered into by reason of misrepresentation, undue influence or mistake does not necessarily [mean] that a choice-of-law provision contained therein will be denied effect. This will only be done if the misrepresentation, undue influence or mistake was responsible for the complainant's adherence to the [choice-of-law] provision .... Otherwise, the choice-of-law provision will be given effect ....

Restatement (Second) of Conflict of Laws § 201 cmt. c (1971); *see also* § 187 cmt. b.

■ Unfortunately, Nevada has neither adopted or rejected the view set forth in the Restatement. In the absence of controlling precedent from the Nevada Supreme Court, this Court must use its own best judgement to predict how the state court would decide the relevant substantive issues. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, modified*, 810 F.2d 1517 (9th Cir. 1987); *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir.1980); *Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.*, 106 F.Supp.2d 1051, 1053 (D.Nev.2000). "In doing so, this Court may look to state court decisions from sister jurisdictions, treatises and other helpful resources." *Vegas Jet*, 106 F.Supp.2d at 1053.

As Plaintiff points out, the Ninth Circuit has previously stated that § 201 of the Restatement provides "the traditional view" as to the enforceability of a choice-of-law provision where the contract is otherwise invalid. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 641 (9th Cir.1988). In that same case, the court assumed that Washington, which had not decided the issue, would accept the traditional view as stated in the Restatement. *Id.* Specifically, the court found that Washington courts would enforce a choice-of-law provision in a contract unless that clause itself was obtained by a misrepresentation. *Id.* Thus, when the United States District Court for the District of Arizona had to decide how a Nevada court would rule on § 201, it applied the *Sparling* analysis and held that "[l]ike the Ninth Circuit did in *Sparling*, this Court assumes that the courts of Nevada would adopt 'the traditional view.'" *Southern Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010, 1027–1028 (D.Ariz.2001).

The court agrees with the analysis in *Sparling* and *Southern Union*, and it finds that the Nevada Supreme Court would adopt the "traditional view" as described in § 201 of the Restatement of Conflicts (Second). The court's decision is further bolstered by the fact that both parties have relied on California law throughout the pendency of this case, including in drafting the jury instructions and verdict forms, and this is the first suggestion made by Defendants that Nevada law should apply to the contract. Thus, Plaintiff correctly calculated prejudgment interest under Cal. Civ.Code § 3289.

## 2. STATUTORY INTEREST AND ACTUAL ACCRUED INTEREST

■ Defendants argue that Plaintiff is not entitled to both statutory interest on the $2,000,000 and actual accrued interest on the $500,000 held in Defendants' law firms' trust account.[3] They claim that such a result is "double dipping" and would constitute an impermissible penalty. *City of Milwaukee v. Cement Div. Nat'l Gypsum Co.*, 515 U.S. 189, 197, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) ("[P]rejudgment interest is not awarded as a penalty; it is merely an element of just compensation.") Plaintiff admits that seeking both forms of interest amounts to compounding. However, they argue that compounding is allowed where the case is rooted in equity and the judgment debtor has protracted and multiplied the litigation expensively and unnecessarily. *Cf. Webb v. GAF Corp.*, 949 F.Supp. 102, 110 (N.D.N.Y.1996) (recognizing that a long delay in the return of owed funds can, in appropriate cases, warrant compounding); *In re Den*, 1868 WL 910, 35 Cal. 692, 694 (1868). However, the court need not determine whether "double dipping" amounts to compound in-

terest and whether compound interest would be allowable under California law. To the extent Defendants have "protracted and multiplied the litigation expensively and necessarily," the Court has already dealt with that conduct through its previous Sanctions Order (# 407). Therefore, Plaintiff will not be allowed both its statutory and actual accrued interest on the $500,000.

■ Next, Defendants argue that Plaintiff is not entitled to statutory interest on the $500,000 held in trust; instead, Plaintiff should only be awarded actual accrued interest on the $500,000. They argue that since Mr. Stewart has not had use of the $500,000, Plaintiff is not entitled to statutory interest on that amount. *See Ramada Inns, Inc. v. Sharp*, 101 Nev. 824, 711 P.2d 1, 2 (1985) ("Prejudgment interest is viewed as compensation for use by defendant of money to which plaintiff is entitled ....."). However, *Ramada* is inapplicable to the current case because, as the court has already found, California law, not Nevada law, governs this dispute. Moreover, *Ramada* is distinguishable in that it did not deal with a situation where, as here, neither party had access to the funds in dispute.

■ California law is clear in holding that the purpose of "prejudgment interest ... is to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." *Lakin v. Watkins Ass. Ind.*, 6 Cal.4th 644, 25 Cal.Rptr.2d 109, 863 P.2d 179, 191 (1993); *see also Cassinos v. Union Oil Co.*, 14 Cal.App.4th 1770, 18 Cal.Rptr.2d 574, 586 (1993) ("The policy underlying authorization of an award of prejudgment interest is to com-

---

**3.** Instead, they allege that Plaintiff is only owed the statutory interest on $1,500,000 and

the actual accrued interest on the remaining $500,000.

pensate the injured party to make that party whole for the accrual of wealth which could have been produced during the period of loss."). Furthermore, the California Civil Code specifically provides that each person who is entitled to recover damages is also entitled to recover interest from the day the damages were incurred. Cal. Civ.Code § 3287. In this case, Plaintiff did not have use of the $500,000 during the prejudgment period, and it could not make use of those funds. Moreover, Defendants' failure to release those funds to Plaintiff caused Plaintiff's inability to make use of those funds. It is irrelevant that Defendants also did not have access to those funds. A jury has decided that Defendants did not have a right to any of the $2,000,000, and, as part of their just compensation, Plaintiff is entitled to the full statutory amount in prejudgment interest.

### 3. DECLARATORY RELIEF

In its Amended Complaint (# 182), Plaintiff sought declaratory relief regarding whether Defendants were entitled to retain the $2,000,000 Plaintiff paid to them even though Mr. Stewart did not perform the concert as scheduled. The court deferred ruling on Plaintiff's declaratory relief until the jury had reached its verdict. The court now declares, based on the factual findings explicit within the jury's verdict, that the parties did not enter into an enforceable contract because they did not mutually consent to the same material terms with respect to rescheduling and/or refunding the guaranteed compensation. Declaratory relief is therefore granted in favor of Plaintiff to the full $2,000,000, plus interest accrued from November 9, 2000 until the date of judgment.[4]

## II. SANCTIONS

### A. BACKGROUND

On July 25, 2005, Plaintiff Rio Properties, Inc. (hereafter "Rio") filed its Motion for Order Striking Defendants' Pleadings, or, in the Alternative, Excluding the Introduction of Evidence (Doc. # 278). Defendants Stewart Annoyances, Ltd. and Roderick Stewart (hereafter "Stewart") (collectively "Stewart Defendants") filed its opposition (Doc. # 314) on August 10, 2005, and Rio filed its reply (Doc. # 324) on August 16, 2005. Trial in this action commenced on August 23, 2005. Shortly before the commencement of trial, and due to the severity of the sanctions which had been sought by Rio in its motion, the Court denied the motion without prejudice but expressed its continuing concern over the gravity of the alleged discovery violations which were the subject matter of the motion.

4. Beyond this, Plaintiff has asked the court to issue the following declaratory relief:

  2. The defendants' claimed right to retain the $2,000,000 pending obligatory rescheduling is invalid as a matter of law because:

    a. Neither the March 9, 1999 Agreement nor the January 6, 2000 Amendment contained an enforceable liquidated damages or forfeiture clause;

    b. The defendants failed to establish by credible extrinsic evidence at trial either the existence of an agreement to reschedule for artist illness or to qualify the refund obligations stated in paragraphs D18 of the Agreement and paragraph 2 of the Amendment; and

    c. The parties did not agree to a rescheduling mechanism in the even of excuse arising under paragraph D17, making that paragraph at best an agreement not to agree. Defendants disclaimed and did not present any proof of damages recoverable for breach of an agreement to agree.

However, the court finds it unnecessary to grant such relief as it would require the court to make additional factual findings beyond those already made by the jury, and it would entail making needless legal conclusions.

As the trial progressed and Plaintiff's counsel raised sanction-related objections, the court developed a greater appreciation of the magnitude of the discovery issues and expressed its continuing concern about those issues. The court advised Defendants' counsel that there was a potential for sanctions and placed counsel on notice that they may be held in contempt of court for failure to comply with the production and sanction orders (Doc. # 203) which had been rendered by Magistrate Judge Leen on March 18 and April 1, 2005 ("Discovery Orders"). Thereafter, the court held a hearing outside the presence of the jury on the morning of September 1, 2005. Both this judge and Magistrate Judge Leen presided over the September 1 hearing. Based on the following, the court finds Defendants to be in violation of Rule 37 of the Federal Rules of Civil Procedure, finds both the Defendants and their counsel, Christensen, Miller, Fink, Jacobs, Glaser, Wheel and Shapiro LLP, to be in contempt of court, and imposes sanctions as hereafter described.

As a result of that hearing, the court issued it Sanctions Order on October 11, 2005 (# 407). In the Sanctions Order, the court found that Defendants had committed various abuses of the discovery rules, and the court specifically found by clear and convincing evidence that Defendants had violated the Magistrate Judge's Orders of March 18 and April 1, 2005, which granted Plaintiff's pending motions to compel. The court further held that the violation did not constitute substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of those orders. As a result, the court found the Stewart Defendants and their counsel to be in contempt of court.

As a penalty for its conduct, the court imposed sanctions in the form of reasonable costs and attorneys' fees incurred by Plaintiff which are reasonably associated with any failures or violations of discovery ordered by the Magistrate Judge from the time of the production deadline—4:00 P.M. on March 25, 2005. The court also found that Defendants' conduct led Plaintiff to resort to third-party subpoena and discovery practice, and the court imposed monetary sanctions in the form of reasonable costs and attorneys' fees incurred by Plaintiff for services after March 25, 2005, which are reasonably related to discovery efforts from third parties for any evidence which should have been provided, but was not, by the Stewart Defendants by March 25, 2005.

The court ordered Plaintiff to submit its itemization of costs and attorneys' fees, including brief descriptions of how the service or cost was reasonably related to a particular discovery abuse, failure, or violation. Defendants were also provided the opportunity to make specific objections to such costs and attorneys' fees.

On November 10, 2005, Plaintiff filed its itemization of costs and attorneys' fees (# 420), along with two declarations. In sum, Plaintiff seeks $181,781.50 in fees and $48,955.98 in costs, for an overall total of $230,737.48. Plaintiff admits that the amount claimed is substantial, but it claims that it is a direct result of Defendants' "omissions and deceptions." (# 420, p. 2). In addition, Plaintiff requests that the court grant it another $6,399.50 to reimburse it for the settlement conference for which Mr. Stewart failed to appear.

One of Plaintiff's attorneys, Kristina Pickering, attached a declaration explaining in greater detail the basis for the claimed fees and costs. Specifically, Plaintiff has used the following categories of discovery as the basis for its request: (1) third party discovery that was made necessary by Defendants' failure to produce requested documents; (2) other promoter discovery necessitated by De-

fendants' conduct; (3) medical provider discovery required because Defendants failed to produce a general ledger or the medical provider information until April of 2005; (4) summary judgment opposition—Plaintiff has included part of the time opposing summary judgment. It claims to have done so because some of the information obtained through third-party discovery was used in opposing Defendants' motion for summary judgment; (5) undisclosed witnesses—Plaintiff included charges associated with moving to exclude witnesses that were allegedly not disclosed in a timely manner; (6) re-depositions and depositions of Stewart principals, which, according to Plaintiff, were only made necessary by Defendants' non-compliance with the court's orders; (7) time charges associated with the motion to strike/motion for preclusion and with the contempt proceedings. Unfortunately, there is no specific dollar amount attached by Plaintiff to any of these categories.

In its Objections (# 422), Defendants argue that the vast majority of the fees and costs sought by Plaintiff are not "reasonably associated with" either discovery violations or with Defendants' violation of the court's orders. Defendants do not contest any fees or costs related to the issue of the House of Blues file, which is discussed at length in the court's previous Sanctions Order. However, Defendant submits that over $210,000 of the fees and costs claimed by Plaintiff are not "reasonably related to" or "reasonably associated with" discovery failures or violations of Discovery Orders. Defendants' claim that Plaintiff has sought to recover virtually all its fees and costs for discovery practice after the entry of the Discovery Orders, with the exception of billing for expert discovery and the deposition of Plaintiff's own witnesses.

Specifically, Defendants allege that the following areas of discovery are not rea-sonably related to discovery abuse: (1) the March 25, 2005 document production; (2) discovery from Atlantic Records/Warner Brothers and Clear Channel; (3) depositions taking place after March 25, 2005 since Plaintiff had all the documents it had requested (with the exception of House of Blues) before depositions began; (4) fees and costs related to medical discovery; (5) fees related to witness Rob Dickins; (6) other post-March 25, 2005 discovery activities not relating to any discovery violation or failure on the part of Defendants; and (7) fees and costs for the settlement conference.

The court has considered the arguments of the parties. Generally, the court is awarding Plaintiff its attorneys' fees that the court finds are reasonably related to the House of Blues discovery failures, the discovery relevant to Atlantic Records/Warner Bros. and Clear Channel, fees and costs related to medical discovery after March 25, 2005, and reasonable fees associated with Plaintiff's Motion to Strike/Motion for Preclusion and the fees related to contempt proceedings. The court has not awarded attorneys' fees associated with the unsuccessful settlement conference before the Magistrate wherein certain Defendants did not appear. This failure, although inexcusable, was not reasonably related to a discovery violation or the court's order awarding sanctions. Similarly, the court does not award attorneys' fees associated with the Plaintiff's opposition to Defendants' Motion for Summary Judgment. The court finds that these fees were neither sufficiently distinct nor sufficiently related to discovery violations that they should be included in the court's award of sanctions. Additionally, the court did not award attorneys' fees associated with a substantial portion of the depositions of Stewart principals. However, because some of the discovery viola-

tions undoubtedly had an impact upon these depositions, the court awarded a portion of Plaintiff's fees.

Upon consideration of all of these factors, the underlying Sanction Order of the court and the purpose of the sanction award, the court concludes that Plaintiff is entitled to sanctions in the amount of $120,000 in attorneys' fees.

With regard to sanctions related to the costs claimed by Plaintiff, the Court addresses them as follows:

1. *Service of Subpoenas Duces Tecum, Including Overnight Expenses to Process Servers.*

■■■ The Ninth Circuit has explicitly stated that private process servers' fees are properly taxed as costs. *Alflex Corp. v. Underwriters Laboratories, Inc.,* 914 F.2d 175, 178 (9th Cir.1990). Given the nature of the abuses which the court has identified in its Order of October 7, 2005 (Doc. # 407), the court deems that the full amount of the itemized fees by Plaintiff in a total amount of $5,280.39 is appropriately included within the sanctions intended by the court.

2. *Witness Fees in the Amount of $1,260.*

The court concludes that the itemized witness fees submitted by Plaintiff fairly and reasonably fall within the category of costs intended by the court in its sanctions award. Therefore, the full amount of $1,260 will be awarded as a cost sanction.

3. *Attorney Travel Time and Expenses for Depositions in the Amount of $1,772.23.*

Attorney travel time and expenses for depositions in the amount of $1,772.23 should be and hereby are allowed as part of the sanctions award of costs in this matter.

4. *Deposition Transcript and Videography Costs of $16,546.92.*

■■■ The court notes that most of the claimed costs are awardable as compensable costs pursuant to 28 U.S.C. § 1920(2). Although the Ninth Circuit Court seems to be silent on the issue of taxability of video depositions, most courts agree that the costs associated with video depositions are taxable. 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURES § 2676 (3d ed.1998). It therefore appearing that the bulk of the claimed costs in this category would be awardable as costs to Plaintiff as the prevailing party in this action, the court finds that any portion of such costs which would not be properly awarded as compensable costs should still be awarded as falling within the court's sanction order in this action. Consequently, the court awards these costs as sanctions in the amount of $16,546.92.

5. *Discovery Hearing Transcript Costs in the Amount of $2,110.40.*

■■■ There is authority within the Ninth Circuit to award both pre-trial and trial transcripts as taxable costs to the prevailing party. *Independent Iron Works, Inc. v. U.S. Steel Corp.,* 322 F.2d 656, 676–677 (9th Cir.1963). Recognizing that these costs are generally compensable to the prevailing party and that any amount that might not be considered to be compensable is reasonably related to the sanctions intended by the court, the court awards the full amount requested of $2,110.40 as sanctions.

6. *Photocopy Costs: Itemized In-house copies—prorated of $21,557.23.*

■■■ Plaintiff has submitted its costs for copies from Litigation Services & Technologies of $15,472.28. This represents the copy charge of the large production that was ordered to be produced by

Defendants in Las Vegas by March 25, 2005, and Defendants have objected to this charge as a sanction on the grounds that Plaintiff would have incurred the charges no matter when Defendants' production was provided. Plaintiff responds that it incurred greater copy charges prior to Defendants' production due to having to obtain records from third parties that should have been provided by Defendants. The court recognizes that a large part of this copy expense would have been incurred by Plaintiff regardless of the date received and does not view this charge as reasonably associated with the discovery violations upon which sanctions have been ordered. It, therefore, will not be included as a sanction herein in this category. However, the court views the balance of the copy costs itemized by Plaintiff to be reasonably related to the sanctions intended by the court and awards them in the amount of $6,084.95.

7. *Remaining Costs Claimed for Tabulated Long Distance Phone Charges—$69.48; Runner Costs— $157.50; Tabulated Postage Charges—$81.00; Miscellaneous— $120.83.*

The court finds that the above-stated costs claimed by Plaintiff are properly included within the sanctions intended by the court. The court therefore awards $428.81 as sanctions based upon this itemization.

The court finds that all of the attorneys' fees and costs awarded as sanctions herein were reasonably incurred by Plaintiff and are reasonably associated with the discovery violations identified in the court's sanction order of October 7, 2005 (Doc. # 407). However, none of the costs awarded as sanctions herein may be further included in the taxation of costs which may be claimed by Plaintiff as the prevailing party in this action.

Plaintiff's Motion to Strike (# 425) is denied as the court finds that defendants' filings substantially comply with the court's sanctions order.

## III. CONCLUSION

Defendants' Objections to Plaintiff's Proposed Judgment (# 406), filed October 5, 2005, are GRANTED IN PART and DENIED IN PART. Plaintiff Rio Properties, Inc., is entitled to the full $2,000,000 plus the statutory interest on that amount, running from November 9, 2000, through entry of judgment herein. However, Plaintiff is not entitled to the interest actually accrued on the $500,000 held in Defendants' counsels' trust account.

GOOD CAUSE APPEARING, the court hereby imposes sanctions in favor of Plaintiff and against the Stewart Defendants and their counsel, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP for discovery violations in this action in the amount of $120,000 for attorneys' fees incurred by Plaintiff and $33,483.70 in costs incurred by Plaintiff which are reasonably related to the discovery violations at issue herein, for a total sanction award in favor of Plaintiff in the amount of $153,483.70.

JUDGMENT SHALL BE ENTERED ACCORDINGLY.

IT IS SO ORDERED.