HAROLD R. ABRAMS, Indiv., *et al.*, Plaintiffs-Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—98—4154

Opinion filed June 30, 1999.

Forman & Miller, of Chicago (Harold Abrams and Ron Abrams, of counsel), for appellants.

O'Hagan, Smith & Amundsen, of Chicago (James W. Fessler, Michael Resis, and Glen E. Amundsen, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

In this declaratory judgment action, the plaintiffs, Harold R. Abrams (Abrams), Harold R. Abrams, P.C. (Abrams P.C.), and Ron D. Abrams, appeal from the trial court's entry of summary judgment against them and in favor of the defendants, State Farm Fire & Casualty Company (State Farm Fire) and State Farm General Insurance Company (State Farm General) (referred to collectively as State Farm). The trial court found that State Farm had no duty to defend and indemnify the plaintiffs in an action pending against them in federal court. For the reasons that follow, we affirm.

Harold R. Abrams (Abrams) and Ron D. Abrams are both licensed attorneys practicing with the law firm of Harold R. Abrams P.C. (Abrams P.C.). On October 1, 1996, State Farm Mutual Automobile Insurance Company (State Farm Auto) filed a four-count complaint in the United States District Court for the Northern District of Illinois against Abrams and Abrams P.C., among others, alleging that, since at

least the 1980s, they had been involved in a scheme to make fraudulent insurance claims. Counts I and II of the complaint alleged violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C.A. §§ 1962, 1964 (West 1984 & Supp. 1999)). Counts III and IV asserted causes of action for common law fraud and conspiracy to commit common law fraud, respectively.

Abrams and Abrams P.C. tendered their defense of the federal action to State Farm[1] under business liability and personal liability umbrella insurance policies issued to Abrams in 1992 and renewed annually thereafter. State Farm Auto then filed an amended complaint in the federal action. The amended complaint contained 24 counts, 6 of which were directed against Abrams, Abrams P.C., and Ron Abrams (collectively the plaintiffs). Counts I, II, and V of the amended complaint asserted RICO Act violations. Counts III and VI asserted causes of action for common law fraud, and count IV asserted a cause of action for conspiracy to commit common law fraud. The amended complaint asserted that the plaintiffs had participated in a "Sudden Stop Accident Scheme," in which "street-level organizers" recruited participants to stage accidents by intentionally slamming on their brakes to cause "sudden stop" rear-end collisions. According to the amended complaint, the street-level organizers then referred the participants to health care providers that provided false diagnoses and billed for unnecessary or nonexistent tests and treatment and to attorneys that pursued fraudulent insurance claims. The complaint asserted that, "[t]o enhance their ability to obtain recoveries against the unsuspecting drivers' insurance companies in connection with the Sudden Stop Accidents, the attorneys" involved "offer and/or agree to settle the fraudulent bodily injury claims at substantial discounts to normal claims values" and "threaten to, and do, file lawsuits to recover for the fraudulent bodily injury claims if they are not settled." The amended complaint alleged that State Farm Auto had paid out over $3 million in connection with the fraudulent claims arising from the accident scheme and had also incurred substantial investigative and litigation expenses.

Abrams and Abrams P.C. provided State Farm with a copy of the amended complaint, and Ron Abrams, who had not been named in the original complaint, tendered defense of the amended complaint to State Farm under Abrams' business liability and personal liability

---

[1]It appears that Abrams and Abrams P.C., and later Ron Abrams, tendered their defense to State Farm Fire, which issued only the personal liability umbrella policy. State Farm General, which issued the business liability policy, was later added as a defendant by agreement of the parties.

umbrella policies. Subsequently, State Farm notified all the plaintiffs that it was accepting defense of the federal action on their behalf under a reservation of rights.

On January 16, 1998, State Farm notified Abrams and Abrams P.C. that it was declining their tender of defense and request for coverage under the relevant policies. On January 23, 1998, Abrams and Abrams P.C. filed a three-count complaint for declaratory relief, seeking a finding that State Farm had an obligation to defend and indemnify them with regard to the federal action. Subsequently, State Farm Auto notified Ron Abrams that it was declining his tender of defense and request for coverage. Abrams and Abrams P.C. then obtained leave to amend their complaint to add Ron Abrams as a plaintiff. In counts I and II of the amended complaint, the plaintiffs sought declarations that State Farm was obligated to defend and indemnify them under the property damage and personal injury provisions of the relevant policies. Count III sought a declaration that State Farm was liable for attorney fees and costs under section 155 of the Insurance Code (215 ILCS 5/155 (West 1996)) due to its unreasonable and vexatious misconduct in refusing to defend the plaintiffs.

On May 7, 1998, the plaintiffs moved for summary judgment "on the issue of whether State Farm owe[d] a duty to defend the underlying suit." In their memorandum in support of the motion, the plaintiffs specified that they sought a declaration only with respect to State Farm's duty to defend under the personal injury coverage provisions of the relevant policies, the substance of count II of the complaint. State Farm responded to the plaintiffs' motion for summary judgment as to count II and filed its own motion for summary judgment as to all three counts of the plaintiffs' complaint.

After conducting a hearing on the cross-motions, the trial court denied the plaintiffs' motion for summary judgment as to count II of their complaint and granted State Farm's motion for summary judgment as to all three counts. The plaintiffs appeal only from the portion of the trial court's order denying their motion for summary judgment as to count II and granting State Farm's motion for summary judgment on that count.

■ Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, when taken together and in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Majca v. Beekil*, 183 Ill. 2d 407, 416, 701 N.E.2d 1084 (1998). We review the trial court's granting of a summary judgment *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401, 692 N.E.2d 1150 (1998).

■ An insurer's duty to defend, which is much broader than its duty to indemnify, is generally determined by comparing the allegations of the underlying complaint against the insured to the language of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer is obligated to defend its insured. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393, 620 N.E.2d 1073 (1993). This is true even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). In determining the insurer's duty to defend, "[t]he allegations in the underlying complaint must be liberally construed in favor of the insured." *Outboard Marine*, 154 Ill. 2d at 125. Additionally, if a provision of the insurance policy can reasonably be said to be ambiguous, that provision will be construed in favor of the insured. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4, 429 N.E.2d 1203 (1981). We will not, however, distort the language of a policy to create an ambiguity where one does not exist. *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1064, 682 N.E.2d 1245 (1997).

■ If the duty to defend exists, the insurer's duty to indemnify cannot be determined until the underlying action has been adjudicated. *Outboard Marine*, 154 Ill. 2d at 127-28. If, however, a court determines that the insurer has no duty to defend, it may simultaneously determine that the insurer has no duty to indemnify. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336, 621 N.E.2d 39 (1993).

The allegations contained in the underlying federal action have been summarized above. We must now compare those allegations to the relevant portions of the business liability and personal liability umbrella policies.

State Farm General issued a business liability insurance policy to Abrams in October 1992. The policy, which was renewed annually thereafter, provides, in relevant part:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of *** **personal injury** *** to which this insurance applies. *** This insurance applies only:

* * *

2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you."

Under the terms of the policy, personal injury is defined as: "injury, other than **bodily injury**, arising out of one or more of the following offenses: \*\*\* malicious prosecution."

State Farm Fire issued the personal liability umbrella policy to Abrams in 1992 and renewed it annually thereafter with some modifications. At all relevant times, the personal liability umbrella policy provided that, "If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**." From May 26, 1992, through May 26, 1994, the policy provided that " **'loss'** means an accident that results in **personal injury** or **property damage** during the policy period. This includes exposure to injurious conditions." During that same period, personal injury was defined, in relevant part, as "malicious prosecution."

Beginning with the policy issued on May 26, 1994, the following relevant changes were made to the personal liability umbrella policy. Loss was defined as:

"a. an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

b. the commission of an offense or series of similar or related offenses, which result in **personal injury** during the policy period."

The definition of personal injury was changed, in relevant part, from "malicious prosecution" to "injury caused by one or more of the following offenses: \*\*\* malicious prosecution."

Neither the business liability policy issued by State Farm General nor the personal liability umbrella policy issued by State Farm Fire contains a definition of the term "malicious prosecution."

The plaintiffs contend that, while none of the counts in the underlying complaint are labeled as such, the complaint "alleges facts supporting both malicious prosecution and malicious use of process theories." As such, they contend, the allegations raise the potential for coverage under the personal injury coverage provisions contained in both the business liability and the personal umbrella liability policies, thereby obligating State Farm to defend them. State Farm contends that the factual allegations of the underlying complaint do not allege a cause of action for malicious prosecution as defined in Illinois and that, even if they did, several policy exclusions apply to bar coverage in the instant situation.

■ As stated above, the policies in question provide no definition for the term "malicious prosecution." Terms that are used in an insurance policy but not defined therein must be given their plain and ordinary meaning, and courts often refer to dictionaries to obtain this

meaning. *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719, 725, 682 N.E.2d 331 (1997).

The parties here disagree as to how we should define malicious prosecution for purposes of determining whether coverage potentially exists. The plaintiffs urge us to adopt the lay definition of malicious prosecution, which Webster's Third New International Dictionary defines as "the bringing of a civil or criminal proceeding against another in a court of law without reasonable cause and with malicious intent." Webster's Third New International Dictionary 1367 (1993). "Malicious" is defined therein as "given to, marked by, or arising from malice." Webster's Third New International Dictionary 1367 (1993). "Malice", in turn, is defined as "intention or desire to harm another, usu. seriously through doing something unlawful or otherwise unjustified: willfulness in the commission of a wrong: evil intention." Webster's Third New International Dictionary 1367 (1993). The amended complaint in the federal action alleges that the plaintiffs filed false claims with State Farm Auto on behalf of accident participants and, in some instances, filed lawsuits when those claims were not settled. It further alleged that State Farm Auto paid out over $3 million in connection with the fraudulent claims and incurred substantial expenses for investigation and litigation. The plaintiffs claim that these allegations fall squarely within the definition of malicious prosecution, thereby obligating State Farm to defend them in the federal action.

As discussed below, State Farm argues that we should use the elements of a cause of action for malicious prosecution in defining that term rather than its lay definition. Nonetheless, State Farm argues that, even using the lay definition of malicious prosecution, the facts alleged in the federal action do not even potentially bring the amended complaint within the relevant policies' personal injury coverage. The amended complaint, State Farm notes, does not allege that the plaintiffs here were claimants or parties to the lawsuits filed with regard to unsettled claims but only that the plaintiffs were attorneys representing the parties who filed claims and lawsuits. Therefore, State Farm contends, even if the amended complaint does set forth facts alleging that a malicious prosecution, as defined above, took place, it does not allege that the plaintiffs are the ones who committed it. As the plaintiffs point out, however, the amended complaint alleges that the plaintiffs were part of a conspiracy and that, as such, they were responsible for the acts of each member of the conspiracy. Furthermore, under Illinois law, an attorney can be held liable for malicious prosecution where the attorney, knowing no valid cause of action exists, files an action for an improper purpose. *Berlin v. Nathan*, 64 Ill. App. 3d 940, 948, 381 N.E.2d 1367 (1978).

The language of the relevant policies provides that State Farm will pay any sums its insured becomes obligated to pay as damages for personal injury. The policies define personal injury alternatively as "malicious prosecution," "injury *** arising out of *** malicious prosecution," and "injury caused by *** malicious prosecution." Applying the lay definition of malicious prosecution, therefore, the policies essentially provide that State Farm will pay any sums the insured becomes obligated to pay as damages for injury arising out of or caused by the bringing of a civil proceeding against another in a court of law without reasonable cause and with malicious intent. Although the lawsuits allegedly filed in furtherance of the "Sudden Stop Accident Scheme" were filed against State Farm Auto's insureds rather than against State Farm Auto itself, the amended complaint does allege that State Farm Auto was injured as a result of the false claims and lawsuits filed. Therefore, if we adopt the plaintiffs' proposed definition of malicious prosecution, the facts alleged in the amended complaint potentially bring the complaint within the relevant policies' personal injury coverage.

■ State Farm, however, urges us to define the term "malicious prosecution" in terms of the elements needed to establish a common law cause of action for malicious prosecution. In order to establish a cause of action for malicious prosecution in Illinois, a plaintiff must establish: (1) that the defendant in the malicious prosecution action brought a previous action against him maliciously and without probable cause; (2) that the previous action was terminated in his favor; and (3) that he suffered some "special injury" or damage beyond the usual expense, time, or annoyance attributable to defending a lawsuit. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 272, 685 N.E.2d 1347 (1997). In support of its position that this is the appropriate definition for our utilization, State Farm relies on *Spiegel v. Zurich Insurance Co.*, 293 Ill. App. 3d 129, 131-32, 687 N.E.2d 1099 (1997), where this court, when determining whether insurance coverage existed under a policy providing coverage for damages arising from malicious prosecution, defined malicious prosecution by setting forth the above-stated elements. See also *Aetna Life & Surety Co. v. Northern Trust Co.*, 169 Ill. App. 3d 678, 680-81, 523 N.E.2d 1043 (1988), where this court found an insurance carrier had no duty to defend its insured under malicious prosecution coverage where the underlying "complaint did not allege in substance all the factual elements necessary" to a cause of action for malicious prosecution.

State Farm argues that the amended complaint in the federal action does not allege that the plaintiffs here filed previous actions

against State Farm Auto, that they did so maliciously and without probable cause, that the prior actions were terminated in State Farm Auto's favor, or that State Farm Auto suffered any special injury or damage as a result of the prior actions.

The plaintiffs acknowledge that State Farm has correctly set forth the elements for a malicious prosecution cause of action in Illinois. They contend that, even if this definition is applied, though, State Farm is obligated to defend them. The plaintiffs claim that Illinois law does not require them to establish that the federal action pleads the proper elements to state a cause of action for malicious prosecution in order establish their right to be defended by State Farm. To hold otherwise, they contend, would be to place them "at the mercy of the underlying plaintiff's attorney's drafting skills." See *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 377, 522 N.E.2d 758 (1988). Rather, the plaintiffs assert, they are only required to show that the complaint in the federal action "state[s] facts which bring the case within, or potentially within, the policy's coverage." *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 393, 442 N.E.2d 245 (1982).

The plaintiffs are correct that, for the duty to defend to exist, it is only necessary that the underlying complaint state facts which bring the case potentially within the policy's coverage. The amended complaint in the federal action, however, does not allege that any lawsuits in furtherance of the accident scheme were filed against State Farm Auto. It is well settled that such actions cannot be maintained against an insurance carrier directly. *Richardson v. Economy Fire & Casualty Co.*, 109 Ill. 2d 41, 47, 485 N.E.2d 327 (1985). Therefore, if we apply State Farm's definition of malicious prosecution, the amended complaint clearly does not plead facts bringing the federal action even potentially within the relevant policies' personal injury coverage.

■ The outcome of this appeal, however, does not depend on which definition we apply for the term "malicious prosecution." Assuming arguendo that the allegations of the amended complaint do potentially fall within the definition of personal injury as defined in the relevant policies, we agree with State Farm that certain exclusions apply to bar coverage in the instant case. We, however, find it sufficient to discuss one exclusion which exists in both policies and serves to bar coverage. From the time it was issued in 1992, the business liability policy has provided, in relevant part, that "[t]his insurance does not apply to: *** **personal injury** due to rendering or failure to render any professional services or treatments. This includes but is not limited to *** legal *** services." The personal liability umbrella policy contains a similar exclusion. At all times, that policy has provided, in relevant

part, that: "We will not provide insurance: \*\*\* for any **loss** caused by providing or failing to provide a professional service."

When construing an insurance policy's professional services exclusion in *State Street Bank & Trust Co. v. INA Insurance Co.*, 207 Ill. App. 3d 961, 967, 567 N.E.2d 42 (1991), this court wrote that the term "professional service" "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature."

The plaintiffs do not argue, nor could they successfully, that legal services do not fall within this category. Instead, they contend that the professional services exclusions in the policies are inapplicable because:

> "There is nothing in the suit that pleads damages arising out of professional services. There is no allegation that [the plaintiffs] even rendered or failed to render legal services. Instead, like the other defendants, [the plaintiffs] are simply alleged participants in a conspiracy, participants who happen to also be attorneys."

We disagree. The amended complaint alleges that, shortly after the "Sudden Stop Accidents", the plaintiffs mailed to the "unsuspecting drivers and/or their insurance companies" attorney liens indicating that they had been retained by accident participants to pursue personal injury claims arising from the accidents. The amended complaint further alleges that, in order "[t]o enhance their ability to obtain recoveries against the unsuspecting drivers' insurance companies," the plaintiffs offered to settle the allegedly fraudulent bodily injury claims at substantially discounted rates and threatened to and did file lawsuits if the claims were not settled. It is clear to us that the amended complaint does indeed allege that the plaintiffs provided legal services and seeks to recover from them damages caused by the performance of such services. "[T]hese allegations sweep the underlying action directly within the policy's professional services exclusion." *Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888, 896, 684 N.E.2d 853 (1997).

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

WOLFSON and HALL, JJ., concur.