ASSOCIATED AVIATION UNDER-
WRITERS, INC., a Delaware
corporation, Plaintiff,

v.

VEGAS JET, L.L.C., a limited liability
corporation; Larry Siggelkow, an in-
dividual; Eagle Jet Charter, Inc., a
Nevada corporation; Eagle Canyon
Airlines, Inc., a Nevada corporation;
and Does 1 through 50 inclusive, De-
fendants.

Vegas Jet, L.L.C., a limited liability
corporation; Larry Siggelkow, an
individual, Counterclaimants,

v.

Associated Aviation Underwriters,
Inc., a Delaware corporation,
Counterdefendant.

No. CVS990895RLH(RLH).

United States District Court,
D. Nevada.

July 6, 2000.

Jo Saxe Levy, Crosby, Heafey, Roach &
May, San Francisco, California, lead coun-

sel, J. Mitchell Cobeaga, Beckley, Singleton, Jemison, Cobeaga & List, Las Vegas, Nevada, local counsel, for plaintiff and counterdefendant Associated Aviation Underwriters, Inc.

Eric Zubel, Zubel Chartered, Las Vegas, Nevada, for defendant Vegas Jet, L.L.C.

## ORDER

HUNT, District Judge.

Presently before this Court are two dispositive motions. On January 24, 2000, Plaintiff and Counterdefendant Associated Aviation Underwriters, Inc.'s ("AAU") filed a Motion for Summary Judgment or in the Alternative Summary Adjudication (# 24). Defendants and Counterclaimants Vegas Jet, L.L.C. ("Vegas Jet") and Larry Siggelkow ("Siggelkow") filed an Opposition (# 30) on March 24, 2000. AAU filed a Reply (# 35) on April 6, 2000.

Vegas Jet and Siggelkow also filed a Countermotion for Partial Summary Judgment (# 31) on March 24, 2000 and a Reply (# 36) on April 24, 2000.

## I. BACKGROUND

This case centers around an insurance coverage dispute between Plaintiff and Counterdefendant AAU, a Delaware insurance corporation, and Codefendant and Counterclaimant Vegas Jet, a Nevada-based limited liability corporation. Between January 15, 1998 and January 15, 1999, Vegas Jet maintained an aviation general liability insurance policy ("Policy") issued by AAU. (JSUF ¶ 37.)

It is undisputed that Vegas Jet is a company engaged in the purchase, sale, refurbishment, repair, charter and lease of aircraft. (JSUF ¶ 4.) At the time of the commencement of this suit, Vegas Jet was managed by Codefendant and Counterclaimant Larry Siggelkow. (JSUF ¶ 6.) Prior to his tenure at Vegas Jet, however, Siggelkow served as an employee of Eagle Jet Charter, Inc. ("Eagle Jet Charter") and Eagle Canyon Airlines, Inc ("Eagle

Canyon Airlines"). These businesses allegedly provide air tours and charter airplane services to the Grand Canyon area. (JSUF ¶ 9.)

On April 3, 1998, Eagle Jet and Eagle Canyon Airline filed a lawsuit in Nevada state district court, *Eagle Jet Charter, Inc. v. Siggelkow*, No. A386636, against Siggelkow, Vegas Jet and a number of other codefendants. (JSUF ¶ 10.) This suit alleged that Siggelkow and Vegas Jet had somehow secretly and improperly rendered management and consulting services to Vision Air Corporation ("Vision Air"), one of Eagle Jet's and Eagle Canyon Airline's competitors in the Grand Canyon air tour business.

In May 1998, Vegas Jet and Siggelkow tendered the legal defense of the Eagle Jet action to AAU in the belief that such allegations triggered the advertising injury provisions of the Policy. (Answer & Counterclaim (# 9) at ¶ 20.) AAU initially allegedly refused this tender. Eagle Jet and Eagle Canyon Airline filed a First Amended Complaint in the state court action on June 19, 1998. A Second Amended Complaint was filed on February 23, 1999. In April 1999, AAU allegedly agreed to partially reimburse Siggelkow and Vegas Jet for the legal expenses they had thereto had incurred, while still preserving its claim to any rights extant under the Policy.

On July 16, 1999, AAU filed a Complaint for Declaratory Judgment (# 1) before this Court in order to receive a judicial determination as to whether it owed any duty to indemnify or provide a legal defense to Siggelkow and Vegas Jet in the underlying state action. Siggelkow and Vegas Jet filed an Answer and Counterclaim for Declaratory Judgment (# 9) seeking, in part, a judicial declaration that a duty to defend had been triggered by the allegations put forth in the First Amended Complaint. Both sides have now filed countermotions for summary adjudication of these coverage issues. Jurisdiction in this United

States District Court is based upon the diversity of the parties and the amount in controversy.

## II. APPLICABLE LEGAL STANDARDS

### A. Operative State Law

█ When construing an insurance policy, as in the case here, a federal district court sitting in diversity must apply the substantive law of the forum state in which it lies. *See Fortis Benefits Ins. Co. v. Johnson,* 966 F.Supp. 987, 989 (D.Nev. 1997). Accordingly, this Court will apply Nevada insurance law in order to dispose of the current dispute. In the absence of controlling precedent from the Nevada Supreme Court, this Court must use its own best judgment to predict how the state highest court would decide the relevant substantive issue. *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir. 1986), *reh'g denied, modified,* 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In so doing, this Court may look to state court decisions from sister jurisdictions, treatises and other helpful resources. *See Santana v. Zilog, Inc.,* 95 F.3d 780, 783 (9th Cir.1996).

### B. Summary Judgment Standard

The procedural aspects of this case, however, will still be governed by federal law. *See Caesar Elecs. Inc. v. Andrews,* 905 F.2d 287, 289 n. 3 (9th Cir.1990). A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). In order to preclude a grant of summary

judgment, the non-moving party must do more than show that there is some "metaphysical doubt" as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must set forth " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). All underlying facts will be viewed in the light most favorable to the non-movant party. *See Martinez v. City of Los Angeles,* 141 F.3d 1373, 1378 (9th Cir.1998).

## III. DISCUSSION

█ In Nevada, an insurer's duties to defend and indemnify its insured in the event of a lawsuit are defined by the provisions of the insurance policy. *See Capitol Indem. Corp. v. Blazer,* 51 F.Supp.2d 1080, 1084 (D.Nev.1999). Generally, the duty to defend is triggered by allegations within the complaint in the underlying suit against the insured that "arguably" or "potentially" bring the suit under the policy's provisions. *See Insurance Co. of N. Am. v. Hilton Hotels U.S.A., Inc.,* 908 F.Supp. 809, 814 n. 2 (D.Nev.1995) (construing Nevada law); *see also* 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:13 (3d ed.1996). Once triggered, the duty to defend will generally continue throughout the course of the litigation against the insured. *See Home Savings Assoc. v. Aetna Cas. and Surety Co.,* 109 Nev. 558, 854 P.2d 851, 855 (1993). The duty to indemnify, in contrast, will arise only in the event of final placement of covered, non-excluded liability upon the insured through judgment or settlement. *See* 46 C.J.S. Insurance § 1145 (1993).

In the dispute presently before this Court, the parties have filed cross-motions for summary adjudication of the question of whether AAU bears any duty to defend and indemnify Vegas Jet and Siggelkow in the underlying state court litigation. Resolution of this dispute will require this Court to (A) determine the effect of the

state court plaintiffs' amendment of their pleadings and (B) examine whether the facts alleged therein triggered any contractual duty to defend and indemnify.

### A. Third–Party Plaintiffs' Amendment of Pleadings

Initially, the parties dispute which complaint from the underlying litigation this Court should reference in order to determine the existence or absence of a duty to defend.

Vegas Jet and Siggelkow contend that a duty to defend was triggered by the facts alleged in the First Amended Complaint of the state court lawsuit, filed on June 19, 1998, and that such a duty continues to this day. AAU, however, counters that the subsequent filing of a Second Amended Complaint in that action had the effect of superceding all prior allegations. As a result, AAU contends that this Court should restrict its examination to only those facts alleged therein in order to determine the propriety of declaratory judgment in its favor. After examining the applicable authorities, this Court finds that both sides have misconstrued the operative mechanisms of insurance law.

██ In Nevada, an amended complaint generally supersedes the original complaint and renders it nugatory. *See Randono v. Ballow,* 100 Nev. 142, 676 P.2d 807, 807 (1984); *McFadden v. Ellsworth Mill & Mining Co.,* 8 Nev. 57, 57 (1872). While the Nevada Supreme Court has yet to address the effect of successive complaints in the area of insurance law, authorities from other jurisdictions have held that courts must look to the most recent pleadings in order to discern the continued existence or absence of a duty to defend. *See, e.g., Casualty Indem. Exchange v. City of Sparta, Mo,* 997 S.W.2d 545, 546 (Mo.Ct.App.1999) (referencing amended petition in underlying suit); *Abrams v. State Farm Fire & Cas. Co.,* 306 Ill.App.3d 545, 239 Ill.Dec. 534, 714 N.E.2d 92, 97 (1999) (same); *Reser v. State Farm Fire & Cas. Co.,* 981 S.W.2d 260, 263 (Tex.App.

1998) ("[W]e determine State Farm's duty [to defend] by looking to the most recent pleading before the court."). In view of Nevada's adherence to the general rule of supersession and the weight of authority from other jurisdictions, this Court believes that any analysis of AAU's *current* duty to defend would similarly depend upon a review of the most recently filed pleading in the underlying action.

However, since Vegas Jet and Siggelkow have countermoved in part for a judicial declaration of the creation of a duty to defend from the date of the filing of the first amended complaint, (Defs.' Opp'n & Countermotion at 3), this Court will also nevertheless examine the previous pleading in order to determine whether AAU ever owed a duty to defend *prior* to amendment. That is, this Court must explore whether a duty to defend was triggered by the facts alleged in the first amended complaint and then subsequently extinguished by the superseding amendment (viz., between June 19, 1998 and February 23, 1999). *See Florida Physicians Ins. Co. v. G. William Lazenby, M.D., P.A.,* 576 So.2d 794, 795 (Fla.Dist.Ct. App.1991) ("Where ... the complaint is amended to allege facts that bring the action outside the scope of the policy coverage, the insurer's duty to defend ends."); *see also MCO Envtl. Inc. v. Agricultural Excess & Surplus Ins. Co.,* 689 So.2d 1114, 1116 (Fla.Dist.Ct.App.1997) (noting possibility of extinguishment of insurer duties due to third-party amendment of pleadings).

### B. Scope of Required Policy Duties and Protections

Having determined the manner in which to reference the pleadings in the underlying action, this Court must next compare the allegations therein to the terms of the disputed insurance policy. *See GRE Ins. Group v. GMA Accessories, Inc.,* 180 Misc.2d 927, 691 N.Y.S.2d 244, 246 (N.Y.Sup.Ct.1998) (applying New York law); *see generally Lumbermen's Under-*

*writing Alliance v. RCR Plumbing, Inc.,* 114 Nev. 1231, 969 P.2d 301, 304 (1998) (mandating reference to policy provisions in order to determine their scope and effect under Nevada law). Here, the parties dispute whether the allegations stated in the underlying suit triggered the "advertising injury" protections of the policy.

The Policy issued by AAU states in relevant part:

SECTION I—COVERAGES

     \*     \*     \*     \*     \*     \*

1.  Insuring Agreement

    (a) We [AAU] will pay those sums that the Insured becomes legally obligated to pay as damages because of … advertising injury to which this insurance applies resulting from your aviation operations. We will have the right and duty to defend any suit seeking those damages.

     \*     \*     \*     \*     \*     \*

    (b) This insurance applies to:

     \*     \*     \*     \*     \*     \*

    (2) Advertising injury caused by an offense committed in the course of advertising your goods, products or services;

     \*     \*     \*     \*     \*     \*

SECTION B—DEFINITIONS

1.  Advertising injury means injury arising out of one or more of the following offenses:

     \*     \*     \*     \*     \*     \*

■ (c) Misappropriation of advertising ideas or style of doing business;

(Policy at 5, 17.) While no published Nevada decision has addressed the elements needed to trigger coverage for an alleged "advertising injury," courts from other jurisdictions interpreting identical or substantially similar provisions have uniformly required the insured to offer facts supporting: (1) an advertising injury as defined in the policy; (2) a course of advertising by the insured; and (3) a

causal relationship between the proffered advertising and the alleged injury. *See, e.g., Tradesoft Techs., Inc. v. Franklin Mutual Ins. Co.,* 329 N.J.Super. 137, 746 A.2d 1078, 1087 (2000); *American States Ins. Co. v. Vortherms,* 5 S.W.3d 538, 543 (Mo.Ct.App.1999). Given the uniformity of sister jurisdiction opinion, this Court believes that Nevada would adopt similar requirements for the assertion of advertising injury insurance protection.

Vegas Jet and Siggelkow contend that many of the allegations asserted against them in the First Amended Complaint triggered the policy's advertising injury defense provisions. The First Amended Complaint stated, in pertinent part, that:

42.  While employed by Plaintiffs [Eagle Jet Charter and Eagle Canyon Airlines], Siggelkow has, since the inception of Vision Air, secretly disclosed to Acors and Vision Air, or used for Acor's and Vision Air's benefit, Plaintiffs' confidential trade secrets, including business strategy and pricing information, and client lists, which information Acors and Vision Air have used to take away Plaintiffs' customer base, both present and future.

     \*     \*     \*     \*     \*     \*

THIRD CAUSE OF ACTION

(Conversion—Acors, Vision Air and Vegas Jet)

62.  After formation of Vision Air, Acors, Vision Air and Vegas Jet have wrongfully converted, to their own use, property belonging to Plaintiff, including audio tapes used during flights, and literature.

     \*     \*     \*     \*     \*     \*

FOURTH CAUSE OF ACTION

(Misappropriation of Trade Secrets—Vision Air, Vegas Jet, Acors and Siggelkow)

69.  During the course of their business and at great expense, Plain-

tiffs developed and compiled certain proprietary and secret trade information, confidential processes, procedures and business plans for marketing, operating and managing their business (the "Trade Secrets").

\*    \*    \*    \*    \*    \*

72.    Vision Air, Vegas Jet, Acors and/or Siggelkow misappropriated the Trade Secrets and used the same to further their own economic interests.

(First Am.Compl., attached as Ex. B to Zubel Aff.) Other portions of the First Amended Complaint alleged that Vegas Jet and/or Siggelkow wrongfully used the state court litigants' "secret information" to interfere with present or prospective economic relations. (Id.¶¶ 108–111, 117–119.) The Second Amended Complaint reiterates many of these claims in either identical or only slighted amended form. (Second Am.Compl. ¶¶ 42, 62, 67, attached as Ex. 1 to Erratum (# 8).) Vegas Jet and Siggelkow contend that these alleged acts of misuse of proprietary or secret property constitute "advertising injuries" covered by the Policy, thereby triggering AAU's duty to provide a legal defense.

■ AAU counters that even assuming arguendo that such acts of alleged malfeasance could constitute "advertising injuries," as defined in the policy, Vegas Jet and Siggelkow have failed to point out any allegations within the complaints that they conducted any advertising activities that "caused" the alleged injuries. This is an argument which this Court finds persuasive. Vegas Jet has stipulated that its activities are concentrated in the purchase, sale, refurbishment and lease of commercial aircraft. (JSUF ¶ 4.) It has also stipulated that it has never been in the business of providing air tours of the Grand Canyon

area. (Id.¶ 5.) Thus, AAU correctly points out that none of the alleged acts of misuse or misappropriation of air tour-related property could have been committed in the course of advertising Vegas Jet's good, products or services. Indeed, examination of both the First and Second Amended Complaints reveals a complete absence of such facts. While Vegas Jet and Siggelkow assert that demonstration of such a causal linkage is unnecessary at this stage of the proceedings, such an argument lies contrary to the overwhelming weight of jurisdictions. See Novell, Inc. v. Federal Ins. Co., 141 F.3d 983, 990 (10th Cir.1998) (Utah law) (finding no duty to defend in absence of "causal connection" between alleged injuries and insured's advertising activities); Everest and Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 229 (9th Cir.1994) (California law) ("To compel an insurer to defend under an advertising injury provision, the insured must demonstrate a causal connection between the plaintiff's claim in the underlying action and the defendant-insured's advertising."); Allou Health & Beauty Care, Inc. v. Aetna Cas. and Sur. Co., 269 A.D.2d 478, 703 N.Y.S.2d 253, 256 (2000) (New York law) (requiring causal linkage); American States Ins. Co. v. Vortherms, 5 S.W.3d 538, 543 (Mo.Ct.App.1999) (Missouri law) (same); Tri–State Ins. Co. v. B & L Prods., Inc. 61 Ark.App. 78, 964 S.W.2d 402, 405 (1998) (Arkansas law) (same).

This Court therefore concludes on this basis alone that AAU neither currently holds nor has held in the past any duty to defend Siggelkow or Vegas Jet in the underlying state court litigation.[1] Likewise, these factors in turn negate any future duty to indemnify. See Farmers Texas County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex.1997).[2]

---

**1.** The Court finds it unnecessary to reach the other bases for dismissal implicated in the parties' submissions.

**2.** This finding is not undercut in any manner by allegations in the underlying complaints that Vegas Jet was the "alter ego" of Vision Air, thereby rendering it liable for the advertising injuries allegedly committed by non-

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Vegas Jet, L.L.C.'s and Larry Siggelkow's Countermotion for Partial Summary Judgment (# 31) on March 24, 2000 is DENIED.

IT IS FURTHER ORDERED that Aviation Underwriters, Inc.'s filed Motion for Summary Judgment or in the Alternative Summary Adjudication (# 24) is GRANTED. This Court hereby finds that Aviation Underwriters, Inc. neither holds nor has held in the past any duty to indemnify or defend Vegas Jet, L.L.C. and Larry Siggelkow in the suit *Eagle Jet Charter, Inc. v. Siggelkow*, No. A386636, currently being litigated in the Nevada District Court of Clark County, Nevada.

insured Vision Air. Courts have generally frowned upon the use of alter ego doctrine to rewrite insurance policies to expand coverage beyond the intended scope of the contracting parties. *See American Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 658 P.2d 1015, 1020 (1983); *American Home Ins. Co. v. Travelers Indem. Co.*, 122 Cal.App.3d 951, 175 Cal.Rptr. 826, 834 (1981).