Rule 23 order filed
December 12, 2014;
Motion to publish granted
January 29, 2015.

2015 IL App (5th) 140033

NO. 5-14-0033

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-MR-255 |
| | ) | |
| CHICAGO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Protestant Memorial Medical Center, d/b/a | ) | |
| Memorial Hospital, Women's Care of Southern | ) | |
| Illinois, P.C., Debra Schell, as Mother and Next | ) | Honorable |
| Friend of J.L., a Disabled Minor, and John A. | ) | Stephen P. McGlynn, |
| Hucker, M.D., Defendants). | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

OPINION

¶ 1    The plaintiff, Illinois Insurance Guaranty Fund (the Fund), filed a declaratory judgment action against the defendant, Chicago Insurance Company (Chicago Insurance), for the court to determine whether a "claims-made" insurance policy issued to Women's Care of Southern Illinois, P.C. (Women's Care), for claims made between July 1, 2001, through July 1, 2002, provided insurance coverage for a former employee of Women's

Care, Dr. John Hucker. Chicago Insurance issued the policy. This insurance dispute stems from a separate lawsuit for medical malpractice filed against Women's Care and Dr. Hucker on January 22, 2002, during the effective date of coverage of the claims-made policy. The lawsuit alleged that Dr. Hucker committed medical malpractice on March 25, 2000, while he was employed by Women's Care. However, Dr. Hucker's employment with Women's Care ended on December 31, 2000, and he was not expressly named as an insured in the claims-made policy that was issued by Chicago Insurance after the employment relationship ended.

¶ 2 Both the Fund and Chicago Insurance filed cross-motions for summary judgment on the issue of Chicago Insurance's duty to defend Dr. Hucker in the malpractice lawsuit. The circuit court ruled in favor of the Fund and found that Chicago Insurance was obligated to pay for Dr. Hucker's defense against the malpractice claim. The court entered a final order requiring Chicago Insurance to pay $98,694.64 for costs to defend Dr. Hucker. Chicago Insurance filed a timely notice of appeal. For the following reasons, we reverse and remand with instructions to enter a summary judgment in favor of Chicago Insurance.

¶ 3                                     BACKGROUND

¶ 4 The policy at the center of this insurance dispute is a claims-made policy. A "claims-made" insurance policy is distinguishable from a conventional "occurrence-based" insurance policy with respect to the type of risks each policy insures. *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 715, 929 N.E.2d 531, 537 (2010). An occurrence-based policy insures against an

insurable act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured. A claims-made policy, however, insures against the risk of a claim being made against the insured during the policy period. *Id*. The claims-made policy allows an insurance company to easily identify risks which, in turn, allows the company to know in advance the extent of its claims exposure and compute its premiums with greater certainty. *Id*. The coverage under a claims-made policy is less than a conventional occurrence-based policy, but so are its costs to the insured. *Id*.

¶ 5 The facts alleged in the underlying malpractice complaint establish that on March 25, 2000, Dr. Hucker was an employee of Women's Care, and he delivered a baby, J.L., at Protestant Memorial Medical Center. The baby's mother is Debra Schell. Schell alleged that Dr. Hucker committed malpractice in delivering her baby.

¶ 6 Dr. Hucker's employment agreement with Women's Care required Women's Care to provide for and maintain medical malpractice insurance coverage on a "claims-made basis" during his employment with respect to any duties or services that he performed as an employee of Women's Care. At the end of 2000, Dr. Hucker and another physician left Women's Care to form their own practice. The employment agreement did not require Women's Care to continue to provide Dr. Hucker with claims-made malpractice insurance coverage after the termination of the employer-employee relationship. Instead, the employment agreement required Dr. Hucker to "obtain at his own expense professional liability 'tail coverage' or 'prior acts coverage' covering [him] for professional liability while he was employed by [Women's Care]," and he was required to

3

furnish evidence of such tail coverage or prior acts coverage to Women's Care. Upon leaving his employment with Women's Care, Dr. Hucker obtained his own medical malpractice coverage through MIIX Insurance Company.

¶ 7 On January 28, 2002, Schell filed her medical malpractice lawsuit against the hospital, Women's Care, and Dr. Hucker. Dr. Hucker first became aware of Schell's malpractice claim when he received the complaint sometime after January 28, 2002. Schell sought damages against Dr. Hucker for his alleged malpractice and against both the hospital and Women's Care under a vicarious liability theory claiming that Dr. Hucker committed malpractice while he was their "agent, staff and employee."

¶ 8 Dr. Hucker's own insurance carrier, MIIX Insurance Company, initially provided him with a defense to Schell's malpractice lawsuit until it went into liquidation on April 9, 2008. Thereafter, the Fund assumed responsibility for the obligations of MIIX Insurance Company and took over Dr. Hucker's defense.[1] As noted above, Chicago Insurance had issued a claims-made policy to Women's Care that was in effect when Schell filed her lawsuit. Chicago Insurance provided the defense for Women's Care pursuant to the terms of the claims-made policy. The policy was in effect for a period

---

[1]The Fund is a nonprofit entity established under the Illinois Insurance Code (215 ILCS 5/532 *et seq.* (West 2012)) to protect holders of policies issued by certain insurance companies that become insolvent, and third-party claimants under those policies, when expected coverage ceases to exist. *Rogers v. Imeri*, 2013 IL 115860, ¶ 14, 999 N.E.2d 340.

4

after Dr. Hucker had terminated his employment with Women's Care, July 1, 2001, through July 1, 2002, and Dr. Hucker was not a named insured in the policy. However, on March 23, 2010, the Fund demanded that Chicago Insurance assume Dr. Hucker's defense pursuant to this policy.

¶ 9 Chicago Insurance declined the Fund's request, maintaining that because Dr. Hucker was not an insured under its policy, it did not have the duty to defend him from any malpractice claim. The Fund subsequently filed the present declaratory judgment action requesting the circuit court to make a determination that Chicago Insurance owed Dr. Hucker a defense and indemnification in Schell's malpractice lawsuit. The Fund sought reimbursement for attorney fees and costs that it had expended to defend Dr. Hucker.

¶ 10 The insuring agreement of the Chicago Insurance policy at issue provided, in part, as follows:

"The Company will pay on behalf of the **Insured** all sums which the **Insured** shall be legally obligated to pay as **Damages for Claims** first made against the **Insured** and reported to the Company during the **Policy Period**, or **Extended Reporting Period**, as applicable, arising out of **Bodily Injury**, **Property Damage, Personal Injury** or **Advertising Injury** as a result of a **Medical Incident** resulting from the rendering of or failure to render **Professional Services** by the **Insured**, or by any person whose acts the **Insured** is legally responsible ***."

5

¶ 11    The policy at issue also included language relevant to "PERSONS INSURED" as follows:

"II.    PERSONS INSURED

Each of the following is an **Insured** under this policy to the extent set forth below:

A. the entity or person named in Item 1. of the Declarations as the **Named Insured**;

*\*\*\**

C. any physician or surgeon who becomes a partner, stockholder or employee of the **Named Insured** during the **Policy Period** provided that within thirty (30) days after becoming a stockholder, partner or employee:

1. the **Named Insured** notifies the Company of such appointment, election, ownership or employment;

2. on the date of notification, all other physicians or surgeons who are partners, officers, shareholders or employees are named in this policy; and

3. such physician or surgeon submits a completed application to the Company;

*\*\*\**

E. any employees of the **Named Insured** other than a physician or surgeon, but only while acting within the scope of his or her duties as such."

6

¶ 12    The terms of the policy defined the term "insured" as "any person qualifying as an insured in the PERSONS INSURED section of the policy." The policy defined "named insured" as "the person or entity named in Item 1. of the Declarations of this policy." The policy also set out the right and duty of Chicago Insurance "to defend any **Suit** against the **Insured** seeking **Damages** to which this Insurance applies even if any of the allegations of the **Suit** are groundless, false or fraudulent."

¶ 13    The physician who filled out the application for the policy on behalf of Women's Care requested coverage for Women's Care and two physicians who were employed with Women's Care at the time of the application, Dr. William Chadwick and Dr. Colon-Alcaraz. As noted above, prior to the application, Dr. Hucker and another physician had left Women's Care to form their own practice at the end of 2000. Accordingly, Dr. Hucker was not included in Women's Care's application for insurance coverage.

¶ 14    The policy's declaration page listed the named insured as "Women's Healthcare Specialists, PC d/b/a Women's Care of Southern Illinois, P.C." The policy also included a "SCHEDULE OF NAMED INSUREDS-PYSICIANS AND SURGEONS" as endorsement PSD-2001. Endorsement PSD-2001 listed the following named insureds: William A. Chadwick, M.D. (prior acts coverage to July 1, 1991); Vincent M. Colon-Alcaraz, M.D. (prior acts coverage to July 1, 1991); and Women's Healthcare Specialists, PC, d/b/a Women's Care of Southern Illinois, P.C. (prior acts coverage to August 1, 1999). Endorsement PSD-2002 listed an ancillary employee hired in April 2001, a nurse practitioner named Kelly R. Murray (prior acts coverage to April 16, 2001), and

7

endorsement PSD-2006 listed Dr. Mark S. Wasserman (prior acts coverage to July 1, 1988), who joined Women's Care on July 5, 2001.

¶ 15    Dr. Hucker was not expressly listed or named in the policy as an insured or in any subsequent endorsements.

¶ 16    In the Fund's declaratory judgment lawsuit, the parties filed cross-motions for summary judgment on the issue of whether Chicago Insurance owed Dr. Hucker a defense and indemnity in the Schell lawsuit pursuant to the terms of the insurance policy. The circuit court ruled in favor of the Fund, holding that Chicago Insurance had a duty to defend Dr. Hucker.  The court did not articulate any reasoning or analysis for its decision. Following the settlement and dismissal of Schell's malpractice claim, the circuit court entered a judgment in favor of the Fund and against Chicago Insurance in the amount of $98,694.64 for attorney fees and costs.  Chicago Insurance filed a timely notice of appeal.

¶ 17                          DISCUSSION

¶ 18    This insurance dispute centers on the construction of the language of the insurance policy issued by Chicago Insurance to determine whether Chicago Insurance had a duty to defend Dr. Hucker in the medical malpractice lawsuit.  Chicago Insurance argues that the unambiguous language of the claims-based insurance contract at issue provided that Dr. Hucker was not an insured and did not fit within the coverage parameters set forth in the insurance contract.  The Fund, however, argues that Chicago Insurance had a duty to defendant Hucker because he falls within the policy's coverage language.  The Fund also argues, alternatively, that the language of the policy was

8

ambiguous with respect to its coverage of claims against Dr. Hucker and that we must construe the policy against the insurance company and in favor of coverage.

¶ 19   The issue of whether Chicago Insurance has a duty to defend is presented to us by way of an appeal from the circuit court's summary judgment ruling in favor of the Fund and denial of a summary judgment in favor of Chicago Insurance.  "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits, when taken together and in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Abrams v. State Farm Fire & Casualty Co.*, 306 Ill. App. 3d 545, 548, 714 N.E.2d 92, 94 (1999).  Our review of a summary judgment is *de novo*.  *Id.*

¶ 20   In determining the propriety of the circuit court's summary judgment, we must construe the insurance contract language and determine whether Chicago Insurance had a duty to defend Dr. Hucker.  In construing an insurance policy, the court must ascertain the intent of the parties to the contract.  *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992).  Courts construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire policy.  *Id.*  If the words used in the policy are unambiguous, courts afford them their plain, ordinary, and popular meaning.  *Id.*

¶ 21   An insurer's duty to defend is broader than its duty to indemnify, and it is "generally determined by comparing the allegation of the underlying complaint against the insured to the language of the insurance policy."  *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 716, 929 N.E.2d at 538.  An insurer has the obligation to

defend if the facts alleged in the underlying complaint fall even potentially within the policy's language. *Abrams*, 306 Ill. App. 3d at 549, 714 N.E.2d at 94. In determining whether there is a duty to defend, any doubts will be resolved in favor of coverage. *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593, ¶ 25, 18 N.E.3d 70. However, the rules of construction do not justify construing a contract against an insurer where no real ambiguity exists. *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 970, 801 N.E.2d 1031, 1039 (2003).

¶ 22    In the present case, we believe that Chicago Insurance's duty to defend depends on whether Dr. Hucker qualifies as an insured under the language of the policy at issue. *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 735, 545 N.E.2d 541, 544 (1989) ("[T]wo requirements must be satisfied before an insurer's duty to defend arises: (1) the action must be brought against an insured, and (2) the allegations of the complaint must disclose the potential of policy coverage."). If the allegations of the complaint reveal that the claim at issue was not brought against an insured, then the insurer can justifiably refuse to defend because there is no duty to defend the underlying action. *Id.*

¶ 23    As noted above, Dr. Hucker is not expressly named as an insured under the language of the policy. He was no longer an employee of Women's Care when Women's Care applied for and obtained the claims-made policy. Dr. Hucker's employment agreement with Women's Care did not require it to continue to provide claims-made coverage after the employment relationship ended. Instead, the agreement required Dr.

Hucker to obtain his own insurance and provide Women's Care with proof that he had obtained such coverage.

¶ 24 Nonetheless, the Fund argues that Dr. Hucker falls within a category of insureds within section II of the policy which sets out the descriptions of "**PERSONS INSURED**." Specifically, the Fund highlights section II.E. of the policy, which includes as insureds "any employee of the **Named Insured** other than a physician or surgeon, but only while acting within the scope of his or her duties as such." The Fund argues that Dr. Hucker qualifies as an insured under this category of insureds and argues, alternatively, that the section creates an ambiguity which must be construed against Chicago Insurance.

¶ 25 We agree with Chicago Insurance that this language is not ambiguous and that Dr. Hucker does not qualify as an insured under section II.E. The plain reading of section II.E. provides that it applies only to employees "other than a physician or surgeon." Section II.E. is inapplicable because Dr. Hucker is a physician.

¶ 26 The Fund also quotes the insuring agreement as being ambiguous. Specifically, the insuring agreement provides that Chicago Insurance will "pay on behalf of the **Insured** all sums which the **Insured** shall be legally obligated to pay as **Damages for Claims** first made against the **Insured** and reported to the Company during the **Policy Period**, or **Extended Reporting Period**, as applicable, arising out of **Bodily Injury** \*\*\* as a result of a **Medical Incident** resulting from the rendering of or failure to render **Professional Services** by the **Insured**, *or by any person for whose acts the **Insured** is legally responsible* \*\*\*." (Emphasis added.)

11

¶ 27 The Fund argues that this language establishes insurance coverage for any person whose acts the insured, *i.e.*, Women's Care, is legally responsible. Therefore, the Fund concludes, Dr. Hucker is covered within this insuring agreement because Schell alleged that Women's Care was liable under a vicarious liability theory. Again, the plain language of the insurance policy does not support the Fund's argument. The plain language of the agreement states that Chicago Insurance will make payments on behalf of an "Insured," and as noted above, Dr. Hucker does not qualify as an insured under the plain language of the policy. Reading the plain language of the policy as a whole, it is clear that Chicago Insurance agreed to pay on behalf of the insured, *i.e.*, Women's Care, when it becomes legally responsible for another person's acts.

¶ 28 The language of the policy does not extend any responsibility on the part of Chicago Insurance to the other person for whom the insured is legally responsible. Under the plain language of the policy, Chicago Insurance agreed to pay only on behalf of Women's Care as a result of Dr. Hucker's acts for which it was legally responsible. No provision within the policy extended any obligation for the insurance company to make any payments on behalf of Dr. Hucker for those same acts. The Fund does not cite any cases to establish an obligation of an insured to defend a noninsured simply because a named insured may be vicariously liable for a noninsured's conduct. Neither the terms of the policy nor the law governing the construction of insurance contracts support the Fund's assertion.

¶ 29 The Fund argues that, at the very least, the insuring agreement is ambiguous with respect to Chicago Insurance's obligation to pay for a defense on behalf of Dr. Hucker.

We disagree. An ambiguity exists within an insurance policy only when there exists more than one reasonable interpretation. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). We consider only reasonable interpretations of the policy language and will not strain to find a nonexistent ambiguity. *Id*. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Id*.

¶ 30 The policy language expressly limits the coverage of the policy to only the "**Insureds**." For the insureds, it covers multiple theories of liability, including direct negligence and vicarious liability. However, regardless of the theory, the coverage is only available to the defined insureds, and this insuring language is not ambiguous. No reasonable interpretation of this policy language can extend coverage to individuals beyond the defined insureds.

¶ 31 Unless the policy language requires otherwise, an insurance company has no duty to defend claims against noninsureds. "Where the allegations of the complaint reveal that the action was not brought against an insured and there was no potential coverage under the policy, there is no duty to defend the underlying action." *Owners Insurance Co. v. Seamless Gutter Corp.*, 2011 IL App (1st) 082924-B, ¶¶ 33, 41, 960 N.E.2d 1260 ("As Westfield was not an insured under the written contract provision of the policy, Auto-Owners did not have a duty to defend Westfield."); *Transcontinental Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh*, 278 Ill. App. 3d 357, 368, 662 N.E.2d 500, 508 (1996) ("[I]mplicit in all the cases upholding the duty to defend is the

requirement that the complaint allege facts at least potentially within policy coverage. It necessarily follows that there can be no potential coverage if the plaintiff is not an insured."). Once it is determined that Dr. Hucker is not an insured, "there is no coverage, potential or otherwise," and Chicago Insurance has "no duty to defend" (*Transcontinental Insurance Co.*, 278 Ill. App. 3d at 368, 662 N.E.2d at 508).

¶ 32    The Fund also argues that Chicago Insurance's duty to defend arises when the policy is construed in conjunction with section 546 of the Illinois Insurance Code (215 ILCS 5/546 (West 2012)). The Fund is a "source of last resort," and section 546(a) is designed to ensure that potential claims on the Fund are reduced by the assets of solvent insurers. (Internal quotation marks omitted.) *Rogers*, 2013 IL 115860, ¶ 14, 999 N.E.2d 340. As a result, section 546 of the Illinois Insurance Code provides: "An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, regardless of whether or not such other insurance policy was written by a member company, if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund. The Fund's obligation *** shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy." 215 ILCS 5/546(a) (West 2012).

¶ 33    We agree with Chicago Insurance that this provision is inapplicable to the present case because, with respect to the claim against Dr. Hucker, Chicago Insurance's policy is not "coverage provided by another insurance policy." Chicago Insurance has not provided "other insurance" which must be exhausted under section 546(a). The plain language of the insurance policy and the Fund provisions in the Illinois Insurance Code

14

establish that Chicago Insurance is not "other insurance" with respect to Schell's claim against Dr. Hucker.

¶ 34   Finally, the Fund argues that Chicago Insurance is estopped from raising coverage defenses. It argues that the claim against Dr. Hucker potentially fell within the coverage of the claims-made policy. Therefore, Chicago Insurance had a duty to defend the suit under reservation of rights or seek a declaratory judgment that no coverage exists. The Fund contends that because Chicago Insurance failed to take either of these steps, it is estopped from raising policy defenses to coverage. The Fund's argument is incorrect. An insurer who fails to defend under reservation of rights or file a declaratory judgment action is estopped from raising policy defenses to coverage only if it is later found to have wrongfully denied coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-51, 708 N.E.2d 1122, 1135 (1999). "This estoppel doctrine applies only where an insurer has breached its duty to defend." *Id*. at 151, 708 N.E.2d at 1135. The estoppel doctrine does not apply if the insurer had no duty to defend. *Id*.

¶ 35   As we have determined above, Chicago Insurance had no duty to defend Dr. Hucker. Accordingly, the Fund's estoppel argument has no merit.

¶ 36   The Fund brought this lawsuit seeking a declaratory judgment determining that Chicago Insurance had a duty to defend Dr. Hucker in Schell's medical malpractice lawsuit. Both parties filed motions for summary judgment, and the circuit court granted the Fund's motion without explanation. However, the record on appeal establishes that Chicago Insurance did not have a duty to defend Dr. Hucker and, therefore, is entitled to judgment as a matter of law. As a result, the circuit court erred as a matter of law in

15

denying Chicago Insurance's motion for summary judgment and in granting the Fund's motion. We reverse the circuit court's summary judgment in favor of the Fund and remand with directions to enter a summary judgment in favor of Chicago Insurance.

¶ 37                                    CONCLUSION

¶ 38    For the foregoing reasons, we reverse the summary judgment of the circuit court and remand with directions to enter a summary judgment in favor of Chicago Insurance.

¶ 39    Reversed; cause remanded with directions.

2015 IL App (5th) 140033

NO. 5-14-0033
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ILLINOIS INSURANCE GUARANTY FUND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-MR-255 |
| | ) | |
| CHICAGO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Protestant Memorial Medical Center, d/b/a | ) | |
| Memorial Hospital, Women's Care of Southern | ) | |
| Illinois, P.C., Debra Schell, as Mother and Next | ) | Honorable |
| Friend of J.L., a Disabled Minor, and John A. | ) | Stephen P. McGlynn, |
| Hucker, M.D., Defendants). | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**    December 12, 2014
**Motion to Publish Granted:**    January 29, 2015
**Opinion Filed:**    January 29, 2015

_____

**Justices:**    Honorable Bruce D. Stewart, J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.,
Concur

_____

**Attorneys for Appellant**    Madelyn J. Lamb, Hinshaw & Culbertson, LLP, 521 West Main Street, Suite 300, P.O. Box 509, Belleville, IL 62222; William P. Hardy, Hinshaw & Culbertson, LLP, 400 South Ninth Street, Suite 200, Springfield, IL 62701-1908; Jennifer K. Gust, Hinshaw & Culbertson, LLP, 222 North LaSalle Street, Suite 300, Chicago, IL 60601

_____

**Attorneys for Appellee**    James F. Best, Adam M. Stefancic, Best, Vanderlaan & Harrington, 25 E. Washington Street, Suite 800, Chicago, IL 60602; Ted Harvey, Freeark, Harvey & Mendillo, P.C., 115 W. Washington Street, P.O. Box 546, Belleville, IL 62222 (attorneys for Illinois Ins. Guaranty Fund); Donald K. Schoemaker, Greensfelder, Hemker & Gale, P.C., 12 Wolf Creek Drive, Suite 100, Swansea, IL 62226 (attorney for Protestant Memorial Medical Center, Inc., d/b/a Women's Care of So. Ill., P.C.)

_____